Leslie G. Loomis et al., as Copartners under the Firm
Name of L. G. Loomis & Son, Respondents, *v*. New
York Central and Hudson River Railroad Com-
pany, Appellant.

Carriers — evidence — contract to transport goods signed by
carrier and shipper, but silent as to route, cannot be varied by
evidence of previous parol instructions to ship by a particular
route.

1. A written contract to transport goods from one place to
another, duly signed by both carrier and shipper, but silent as to
the route, cannot be varied by evidence of previous parol instruc-
tions to ship by a particular route. No effect can be given to such
evidence, even when received without objection, provided the court
is asked in due form to instruct the jury that it was merged in the
written agreement if they found there was one.

2. Certain blank spaces in the printed form of a railroad ship-
ping order were left unfilled, such as "Route ......, Charges
advanced $ ......." Such a writing when signed by both parties,
is a contract complete upon its face; the unfilled blanks, although
material, were not necessary to make the contract complete upon
its face and the blanks cannot be filled by parol evidence and effect
given thereto in an action at law.

*Loomis* v. *N. Y. C. & H. R. R. R. Co.*, 136 App. Div. 913, reversed.

(Argued October 23, 1911; decided November 21, 1911.)

Appeal from a judgment of the Appellate Division of
the Supreme Court in the fourth judicial department,
entered January 21, 1910, affirming a judgment in favor
of plaintiffs entered upon a verdict.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*W. Frederick Strang* and *Edward Harris, Jr.*, for
appellant. The refusal of the court to instruct the jury
that all directions to ship this car over the Lehigh Valley
railroad were merged in the written contract was most
prejudical to the defendant, and was contrary to the

established law of this state.    (4 Am. & Eng. Ency. of
Law [2d ed.], 515, 516; *Thomas* v. *Scutt*, 127 N. Y. 133;
*White* v. *Ashton*, 51 N. Y. 280; *Huntington* v. *Dins-
more*, 4 Hun, 66; *Long* v. *N. Y. C. & H. R. R. R. Co.*,
50 N. Y. 76; 4 Elliott on Railroads, § 1423; 4 Wigmore
on Evidence, 3408, § 2425; *Snow* v. *Railroad*, 109 Ind. 422;
*Bessling & Co.* v. *Railroad*, 80 S. W. Rep. 639; *Bishop*
v. *Empire Co.*, 48 How. Pr. 119; *Renard & Bros.* v.
*Sampson*, 12 N. Y. 561.)

*Edward P. White* for respondents.    There was no
error in the refusal of the trial court to charge as
requested.    (*Meyer* v. *Peck*, 28 N. Y. 590; *Ellis* v. *Wil-
lard*, 9 N. Y. 529; *Abbe* v. *Eaton*, 51 N. Y. 410; *Komp*
v. *Raymond*, 175 N. Y. 102; *Smith* v. *Dotterweich*, 200
N. Y. 299; *Tilden* v. *Tilden*, 8 App. Div. 99.)

VANN, J.    The plaintiffs are dealers in produce residing
at Victor, but buying and shipping from Lakeside, New
York, where they are represented by the firm of Furber,
Connell & Norton.    D. P. Reynolds & Co. are produce
dealers in Jersey City, New Jersey, where their place of
business is in the freight yard of the Lehigh Valley rail-
road at Grand street.    They sell and deliver produce
from the railroad cars as they stand in the yard at that
point.

Early in June, 1907, D. P. Reynolds & Co. ordered a
carload of potatoes from the plaintiffs at 85 cents per
bushel, delivered, payable on presentation of a sight
draft with bill of lading attached.    When this order was
received the plaintiffs had a car partly loaded with pota-
toes at Lakeside, and Mr. Furber, their representative,
testified that he delivered to the defendant's freight
agent at that place a paper on which was written in
lead pencil the following: "L. G. Loomis & Son, Grand
St., Jersey City, N. J., by L. V. rate 15 c."    As Mr.
Furber handed this paper to the freight agent he said:
"Here is the instructions for this car of potatoes."

This was denied by Mr. FitzGerald, the agent of the defendant. The freight agent, however, made out and delivered to Furber a bill of lading in the following form: "New York Central & Hudson River Railroad Company. Received subject to the classification in effect on the date of issue of this bill of lading, at Lakeside Station, 6/12, 1907, from L. G. Loomis & Son, the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed in consideration of the rate of freight hereinafter named as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns as just and reasonable. Marks; consignee, L. G. Loomis & Son; destination, Grand St., Jersey City, N. J.; Route...... Charges advanced $...... Description of articles, C. bulk potatoes S. L. & T. O. K. R E L. Weight subject to correction 24000; 5858, Car No. P M; S E P 12/07. (signed) D. H. FitzGerald Agent." Beneath this signature of the freight agent was the following: "The rate of freight from...... to ...... is in cents per hundred pounds  *  *  *  fifth class 15 (signed) D. H. FitzGerald, agent." The various conditions printed on the back are not now material.

At the same time the freight agent made out what is called a shipping order, the material part of which is as follows: "New York Central & Hudson River Railroad Company, Lakeside Station, L. G. Loomis & Son, 6/12 1907. Receive, carry and deliver the articles described

below, in accordance with the classification in effect at the date of this order and subject to the conditions of the bill of lading of which this shipping order is a part * * * Marks, Consignee L. G. Loomis & Son, destination Grand St., Jersey City, N. J., route ......; charges advanced $......; prepay $......; description of articles, C bulk potatoes S L & T O. K. Rel Weight subject to correction, 24000; 5858 Car No. P M Sep. 12/07. (L. G. Loomis & Son, shipper)." On the back of this shipping order, the same conditions were printed as on the back of the bill of lading. The shipping order, as read in evidence, purports to have been signed, "L. G. Loomis & Son, shipper," and the freight agent testified that Mr. Furber thus signed it in his presence, but Mr. Furber denied it. The alleged order was retained by the defendant's agent, but the bill of lading was delivered to the agent of the plaintiffs who mailed it to them at Victor. They wrote on the face thereof the following: "Deliver to the order of D. P. Reynolds & Co. L. G. Loomis & Son." The plaintiffs mailed an invoice to D. P. Reynolds & Co., attached a sight draft on that firm to the bill of lading and mailed it to the First National Bank of Jersey City for collection. At the same time they gave notice of these facts to the freight agent of the Lehigh Valley railroad at its Grand street station in Jersey City.

There are two routes for the shipment of freight from Lakeside to Jersey City, one by the defendant's road and that of the Lehigh Valley and the other by the defendant's road and that of the Pennsylvania Railroad Company. At the date of the transaction in question there was "no fifteen cent rate" from Lakeside to Jersey City according to the Lehigh schedule, although there was one by the Pennsylvania route. The freight stations of the Lehigh Valley and Pennsylvania in Jersey City are about three-fourths of a mile apart, but cars can be transported from one to the other by a somewhat circuitous route, taking about twenty-four hours. The car containing the

potatoes in question was forwarded on the 12th of June, 1907, over the defendant's line to the junction of the Pennsylvania railroad and thence over the latter to Jersey City, where it arrived at the Pennsylvania yard on the eighteenth.   The time usually required over the Lehigh route was about two or three days.   Upon learning that the car was in the yard of the Pennsylvania railroad D. P. Reynolds & Co. telegraphed plaintiffs that they could not handle the potatoes in the yard of that road.   On the same day, June 18th, the plaintiffs wrote Mr. Ewings, the defendant's general superintendent of freight transportation at his office in the city of New York, stating the facts and adding, "Will you kindly have car delivered at Grand street at once?   Let us hear fully from you at once regarding these shipments."   On June 20th Mr. Ewings replied: "We are arranging with our traffic department to have P M 5858 moved to destination via proper junction point and route and will be pleased to advise you later."   On the 24th of June the plaintiffs again wrote Mr. Ewings stating that they were advised by their customer by telegram of even date "that car is still in P. R. R. yards.   Will you kindly have this car moved to Grand street, its proper destination at once and wire us when done?   We feel that a sufficient length of time has already elapsed in which the same could have been done."   On June 25th Mr. Ewings answered stating that "Immediately on receipt of your letter the matter was taken up with Mr. R. L. Calkins, our freight claim agent, and on June 22nd he telegraphed the freight claim agent of the P. R. R.   I have asked Mr. Calkins to confer with you in the matter."   On the 2nd of July the plaintiffs wrote Mr. Ewings, stating that they had heard nothing from Mr. Calkins regarding the car and continued: "We are, however, advised by our customer that the car arrived at Grand street last Saturday and that owing to the long time it was in transit there was now no market for old potatoes it being too late in the season.   He

has, therefore, refused same and this is to advise you that the car is at disposal of your company as we shall collect for the value of same through your claim department."

The car was not transported to the Grand street station until June 29th, when D. P. Reynolds & Co. refused to accept it. The potatoes in question were old potatoes for which there is no demand after new potatoes reach the market, or, as one witness stated, "the old potato business is over after the 20th." Moreover, old potatoes loaded in a car sprout and deteriorate rapidly in warm weather. The Lehigh Valley Railroad Company sold the potatoes for less than enough to pay the transportation charges by $60.78.

This action was brought to recover damages from the defendant for its alleged negligence in not following the shipping directions of the plaintiffs and in so diverting the car from the route specified thereby as to prevent it from arriving within a reasonable time at the Grand street station, its proper destination.

The defendant alleged in its answer, among other facts, that the bill of lading was a contract and that the potatoes were transported and delivered pursuant thereto.

Upon the trial the facts were proved substantially as stated and the court charged the jury in substance that if they found that directions were given to the defendant's agent at Lakeside to ship over the Lehigh road they should render a verdict in favor of the plaintiffs for $399.65, the value of the potatoes at 85 cents per hundred pounds, with interest on the balance. They were further told that if there were no specific directions given to the freight agent by Furber to ship over the Lehigh route their verdict should be for the defendant.

Counsel for the plaintiffs requested the court to charge that "If the jury find Grand Street there (in the bill of lading) means a freight station, failure on the part of the defendant to deliver or tender delivery at that point was a breach of their duty which renders them liable to the

plaintiffs in damages." The court thereupon remarked, " I think it depends on whether there was a direction given to ship by the Lehigh directly. I am going to adhere to that." Later, in refusing another request of the plaintiffs, the court said: "I am going to send this case to the jury on the single proposition that if there was a direction to ship by the Lehigh the defendant is liable, and if there was no such direction the defendant is not liable." The court refused to charge at the request of the plaintiffs "that the insertion in the bill of lading of the words 'Grand Street' if the jury find that it was intended thereby to designate a freight station, was a direction to so ship and deliver."

The defendant's counsel asked the court to charge " That if Furber, acting for Loomis & Son, signed this shipping order, that thereupon became the direction of the railroad in regard to the shipment of this car." The court remarked: "That is true, but I charge you that if in addition to the memorandum made by the agent, by FitzGerald, Furber gave the specified direction to ship over the Lehigh, that it is also a part of the contract." Thereupon defendant's counsel said: " What I wish to have charged is that any directions are merged in this shipping order, if Furber signed it as agent for Loomis." The court asked: "Any direction to ship over the Lehigh ?" By defendant's counsel: " Yes, sir." The court: "I decline to charge as requested." An exception was taken to this ruling.

The jury found a verdict for the plaintiffs in the sum of $399.65, and the judgment entered accordingly was unanimously affirmed by the Appellate Division. The defendant thereupon appealed to this court.

Both the bill of lading and the shipping order were made out by a single operation of a typewriter, manifold paper having been placed between a blank bill and a blank order so arranged that the typewritten part was the same in each. The bill of lading does not refer to

the shipping order nor make it a part thereof; but the shipping order expressly states that it is part of the bill of lading. If both papers, although physically detached and separate, had been duly signed they would have made a contract and would have constituted the entire contract between the parties. If there is any doubt as to the effect of a bill of lading signed by the carrier only but delivered to and retained by the shipper, it is clear that when the bill is signed by both parties it is a contract upon which the minds of both parties have met and it becomes the sole contract between them with reference to the particular shipment involved.

We cannot tell from the verdict, however, whether the shipping order was or was not signed, for the court charged in substance that even if Furber signed the order, still the plaintiffs were entitled to recover if the jury found that he gave the defendant's agent prior oral directions to ship by the Lehigh route and that such directions, if given, were not merged in the written contract. Thus the position of the court was that whether the shipping order was signed or not, if Furber orally directed the shipment to be made by the Lehigh Valley the plaintiffs were entitled to recover. Hence, the jury may have found that Furber signed the shipping order, and also that oral instructions had previously been given to ship by the Lehigh. Thus following the charge of the court that the oral instructions were not merged in the written order, their verdict would have been logically rendered for the plaintiffs. While the parol directions, including the unsigned memorandum, were received in evidence without objection, this did not preclude the defendant from the right to ask that the jury be properly instructed as to the effect thereof, provided they found that the shipping order was in fact signed by the agent of the plaintiffs.

Thus the question presented is whether a written contract to transport goods from one place to another, duly

signed by both carrier and shipper, but silent as to the route, can be varied by evidence of previous parol instructions to ship by a particular route. The answer to this question is too clear to require extended discussion. No effect can be given to such evidence, even when received without objection, provided the court is asked in due form to instruct the jury that it was merged in the written agreement if they found there was one. In order to prevent fraud, perjury and mistake, one of the primary rules of evidence forbids that a written contract should be varied by evidence of previous conversations or unsigned memoranda, which are all conclusively presumed to be embodied in the written instrument expressing the final meeting of the minds of the parties. Thus we have recently held, as required by previous decisions on the subject for time out of mind, that "where a written contract is without ambiguity, clear and complete on its face, with no doubt as to the meaning of any word, no evidence that any term is technical or local, nothing to open the door to proof of extrinsic facts, no effort at reformation either by the pleadings or proof, and the rulings, admitting statements of what was said between the parties before the contract was signed, are not covered by any exception to the general principle of exclusion, parol evidence cannot be received to vary or contradict its terms." (*Lossing* v. *Cushman*, 195 N. Y. 386.)

The respondents, however, insist that the writing in question does not appear on its face to be a complete contract; that the parol evidence was consistent therewith and not contradictory thereof, and hence, that the rule opens to admit such evidence in order to complete an entire contract of which the writing is only a part. (*Thomas* v. *Scutt*, 127 N. Y. 133.) It is further insisted that as certain blank spaces in the printed form were left unfilled, such as "Route . . . . . ., Charges advanced $. . . . . .," it was competent to fill them by parol.

The writing, however, upon the assumption that it was signed by both parties as the jury may have found, was a contract complete upon its face, for the unfilled blanks were incidental merely and not essential to a perfect agreement for the transportation of merchandise by a carrier. Although material they were not necessary to make the contract complete on its face. There are few written contracts to which some material provision might not be added, yet it would be against the law to hold that they are incomplete on their face. The blank for "Charges advanced" could not be filled, for no charges were advanced, and the effect of leaving the blank space unfilled was the same as if it had been filled by a cipher or by some negative equivalent. The effect of not specifying the route was simply to leave that subject open to the choice of the carrier, which could select any route that it chose. Some shippers do not care what route their goods take, as their object is fully attained by delivery at the place of destination regardless of how they came. Many promissory notes are made out upon printed forms with a blank space for the place of payment, and sometimes with another for the rate of interest, but the contract, even with these spaces unfilled, if complete in other respects, is complete on its face. The provisions suggested by the unfilled blanks are not essential to the validity of the note, because the law takes care of those subjects just as it takes care of the route in a bill of lading when the parties omit to specify it. It would tend to undermine business transactions and render contracts insecure if such blanks could be filled by parol evidence and effect given thereto in an action at law. Such evidence is competent only and should be given effect only in an action in equity brought to reform the writing, because through mutual mistake, or mistake on one side and fraud on the other, something was omitted which the parties had agreed to. It has no place in the trial of an action at law, such as the one

before us, and the refusal of the court to charge that it was merged in the writing, if duly signed, was an error calling for a new trial.

Whether the case should have been sent to the jury upon some other theory, such as was suggested by the counsel for the plaintiffs in his requests to charge, already quoted, is not now before us. It was not thus submitted, but on the other hand the theory adopted was such that according to the charge and the refusals to charge the verdict may have no foundation to rest upon except an error of law.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, CHASE and COLLIN, JJ., concur; HAIGHT, J., dissents.

Judgment reversed, etc.