Fuchsberg, J.
Woodmere Academy, a nonprofit educational institution, brought this action to recover the balance due under a charitable pledge agreement. The defendant, Saul P. Steinberg, counterclaimed for the return of moneys he had paid on account. The parties are now here on defendant’s appeal from an order of the Appellate Division, First Department, which, reversing an order of Special Term, granted summary judgment to the plaintiff.
The issue is whether defendant’s contentions that the pledge was subject to certain unfulfilled oral conditions and *748 had been induced by fraudulent misrepresentations raise triable issues of fact or legal defenses. We conclude they do not.
The agreement which is at the root of this case arises out of a fund-raising drive which the academy launched in 1969. One of its main objects was the construction of a school library building. It is undisputed that in August of that year Stein-berg, whose children then attended the school and whose wife for a time was a member of its board of trustees, agreed to contribute $375,000. The pledge was in writing and recited that it was made "in consideration of the gifts of others”. It specified that payments were to be made in installments of "$50,000 in 1970, $50,000 in 1971, and balance in 1972”. It contained no other conditions or limitations. The first installment was paid in January, 1971.
By letter dated December 12, 1972, plaintiff, at defendant’s request, agreed to extend the time for payment of the balance. Defendant, an experienced business executive who makes a point of the fact that prior unhappy experiences with charity-giving had alerted him to a need for great caution in such matters, signed that letter only after he had arranged for his own attorney to participate in the drafting and approval of its language. It reads:
This will confirm the agreement reached between us concerning payment of your pledge of $375,000 to the New Era Fund of Woodmere Academy. We received $50,000 in January 1971, and the balance of $325,000 was originally to have been paid $50,000 by the end of 1971, and $275,000 by the end of 1972.
We agree to extend the time for payment of the present balance of $325,000 from the original due dates, provided that we receive payment in cash, check or immediately marketable securities as follows—$125,000 simultaneously with the exchange of this letter between us, and $200,000 by December 31, 1972.
In recognition of your concern and interest in Woodmere Academy, our library, as you know, has been named "The Barbara Steinberg Learning Center.” You have our unconditional and unqualified assurance that the building will continue to be so designated as long as it is a part of the school, and will be so referred to in any communication, writing or message over which we have control, inasmuch as we view our obligation in this respect in the nature of a trust.
We would appreciate your indicating your confirmation of the foregoing by signing and returning the enclosed copy of this letter together with your payment of $125,000.
Sincerely yours,
THE WOODMERE ACADEMY

*749 Defendant paid the $125,000 installment upon delivery of the letter, but approximately a year later, at a time when he no longer resided in the community where the school was located and his children no longer attended its classes, he advised the academy that another commitment rendered him unable to pay the balance during 1973. After some further communications between them, the parties were unable to agree upon a new schedule and, defendant having failed to make further payments, in August, 1974 plaintiff, having completed the library, elected to bring this suit.
In essence, Steinberg’s claim is that his undertaking was conditioned upon (1) the collection of pledges from other contributors in a total amount equivalent to the sums the academy received from Steinberg, (2) the academy’s earmarking of such matching funds solely for the construction of the library at a cost which was not to exceed $750,000, (3) its pursuit of a plan for merger with the neighboring Lawrence School and (4) the academy’s agreement to manage its financial affairs "wisely and soundly” and disburse its funds "carefully”. He goes on to allege, in rather broad and conclusory fashion, that the pledge was fraudulently induced because, among other things, the merger with the other school was not actively pursued and, despite verbal assurances he had received to the contrary, the school was not in sound financial condition because it had occasion to borrow money from a bank. For its part, the academy states that it undertook, dehors the writings, to obtain matching funds from others; on the motion for summary judgment, it submitted uncontroverted documentary proof that it had done so. It emphatically denies all the other items on which the defendant insists his pledge was conditioned.
Additionally, the academy urges that, even if defendant’s allegations were true, they would not constitute a defense. For the reasons which follow, we agree.
Preliminarily, we observe that, as a matter of public policy, pledge agreements calculated to foster eleemosynary enterprises are enforceable (I. & I. Holding Corp. v Gainsburg, 276 NY 427, 433; Allegheny Coll, v National Chautauqua County Bank, 246 NY 369; Liberty Maimonides Hosp. v Felberg, 4 Misc 2d 291 [Cooke, J.]; cf. Restatement 2d, Contracts [Tent Draft], § 90). Indeed, courts, in the enforcement of such agree *750 ments, seek to resolve doubtful questions so as to avoid their repudiation (Eastern States Agric. & Ind. League v Estate of Vail, 97 Vt 495, 505, and authorities cited therein). "To lightly withhold judicial sanction from such obligations would be to destroy millions of assets of the most benevolent institutions in our land, and to render such institutions helpless to carry out the purpose of their organizations” (Brokaw v McElroy, 162 Iowa 288, 293).
That is not to say that liability for the fulfillment of such a pledge may not be conditioned upon the performance of some act by the beneficiary (Allegheny Coll. v National Chautauqua County Bank, supra, p 375). However, as with contracts generally, when the pledge is made in writing, Unless conditions are expressed, or at least implicit, in the agreement itself, parol evidence may not be used to supply them except to show conditions precedent to the effectiveness of the agreement (Hicks v Bush, 10 NY2d 488, 491) or fraud in the inception (see Tioga County Gen. Hosp. v Tidd, 164 Misc 273, 282; see, also, 73 Am Jur 2d, Subscriptions, §§ 19, 30).
In the case now before us, the operative documents are the two writings to which we have already alluded. One is the original 1969 pledge agreement. The other is the letter-agreement of December 12, 1972, which, as Mr. Justice Capozzoli correctly suggested in his opinion for the majority at the Appellate Division, may be regarded either as a confirmation of the original pledge or as an enforceable agreement on its own (cf. Breger v Hampshire Country Club., 30 AD2d 526, affd 23 NY2d 958). Except as to the original agreement’s reference to the consideration consisting of "gifts of others”, from which it might have been possiblé to imply a promise to obtain matching funds, neither writing expressly or impliedly is conditioned in the other ways suggested by the defendant. If anything, on the principle of inclusio unius est exclusio alterius, the insertion of the one condition regarding the building and naming of the library for Mrs. Steinberg in the December 12 letter implies just the contrary, especially since at least one of its draftsmen was defendant’s counsel.
As already indicated, the documents on their face express a complete agreement with only one expressed condition. Under the parol evidence rule, which is more soundly to be regarded as one of substantive rather than procedural law (Fogelson v Rackfay Constr. Co., 300 NY 334, 338), it is conclusively presumed that that was the only remaining condition to the *751 pledge, any others having merged in the second writing (Loomis v New York Cent. & Hudson Riv. R. R. Co., 203 NY 359; Thomas v Scutt, 127 NY 133, 138). The record having tendered no other admissible proof of a condition precedent and the single condition stipulated in the revision of the pledge agreement as incorporated in the letter of December 12 having already been performed, defendant’s obligation became absolute (see Keuka Coll, v Ray, 167 NY 96, 100).
Moreover, as to so much of the defense as, in essence, speaks of fraud in the inception, our review of the record reveals that the claimed representations on which the defendant relies are either not promises or not false. Even assuming the truth of the assertion that they were uttered, they turn out to have been mere expressions of opinion or of present or future expectations or, when promissory in nature, of conditions subsequent rather than precedent (cf. Cohoes Mem. Hosp. v Mossey, 25 AD2d 476).
Plaintiffs alleged undertaking to collect funds from other contributors, for instance, was, in defendant’s own words, a "challenge pledge”, i.e., one to be matched in futuro. Since the condition that it be matched was one to be performed subsequent to the execution of the original written contract, it too was required to be in writing. Otherwise, the unconditional form of defendant’s subscription could very well have misled others who may not have subscribed had they known of the conditional character of defendant’s commitment (see George v Harris, 4 NH 533). In any event, plaintiffs records showed that it did succeed in raising $563,443 for its "New Era Fund”, its label for the account from which payments for the construction of the library were actually made. This amount far exceeded the $175,000 that defendant had paid on account of his $375,000 pledge.
Similarly, the alleged oral promise to limit the construction cost of the library, then yet to be built, to $750,000 was necessarily a condition subsequent. This was not a misrepresentation of an existing intent; it is not claimed, and certainly not demonstrated in any way, shape or manner, that, at the time when plaintiff is said to have made that promise, it in fact planned to construct the library at a different cost than that represented (see Adams v Clark, 239 NY 403, 410). The cost of the building proper in the end came to $733,373. That an additional $80,698 was spent for equipment, a matter not one of the asserted misrepresentations or conditions, is besides *752 the point. Indeed, even if both figures were added together, allowing for normal variations between projected and actual cost of most new construction, it is self-evident that the variation here can hardly be regarded as material, all the more so since it resulted in no increase in defendant’s obligation or in any frustration of the project for which he had made his pledge.
Obviously, a statement that the school would "wisely” manage its affairs in general, and the funds raised for the library in particular, is more precatory than promissory. Absent a showing of bad faith, of which none is disclosed here, its vagueness and subjectiveness drains it of practical meaning. Defendant also asserts that he had been assured that the school was in "sound financial condition and would so continue”, but he nowhere favors us with a definition of what constitutes "sound financial condition” in the case of a nonprofit organization dependent upon the generosity of its supporters. Taken in isolation, certainly the fact that the school borrowed money from a bank, especially while in the throes of expansion, does not establish the soundness or unsoundness of its financial condition either before or after the pledge was given.
The subsidiary claim—that the plaintiff agreed to pursue efforts to merge with the Lawrence School as a means of strengthening its financial condition—on its face also contemplates future efforts rather than ones preceding or contemporaneous with the giving of defendant’s pledge. Moreover, pursuit of such an objective, and even more so its fruition, necessarily had to be contingent upon a third party, the other school. The record offers nothing to support the barebones charge that such a promise had been dishonored—nothing about what merger efforts were in fact pursued, or what further efforts, if any, it would have been reasonable to pursue, or what reaction there was from Lawrence.
In sum, defendant’s opposing papers were insufficient to create a question of fact or to otherwise preclude the entry of a judgment in plaintiff’s favor as a matter of law (Capelin Assoc. v Globe Mfg. Corp. 34 NY2d 338, 343).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel. and Judges Jasen, Gabrielli, Jones, and Cooke concur; Judge Wachtler taking no part.
*753 Order affirmed, with costs.