# (February 22, 1983)

■ ROBERT E. BELKNAP, III, et al., as Coexecutors of WOLFRAM L. ERTINGER, Deceased, Appellants, v DEAN WITTER & Co., INC., et al., Respondents. — Judgment, Supreme Court, New York County (Helman, J.), entered on September 18, 1981, affirmed. Respondents shall recover of appellants $75 costs and disbursements of this appeal. All concur except Kupferma., J., who

concurs in a memorandum with which Kassal, J., concurs; Sandler, J., concurs in a memorandum with which Sullivan, J., concurs; and Murphy, P. J., dissents in a memorandum, all as follows:

Kupferman, J. (concurring). Plaintiff's decedent (Ertinger), as a retired officer and director of Laird, Bissell & Meeds, Inc. (LB&M), had been a beneficiary of an unfunded pension plan approved by a resolution of LB&M's board of directors on April 4, 1968. Ertinger received monthly pension payments pursuant to the resolution at an annual rate of $18,000 from the date of his retirement, April 1, 1972, until March 31, 1973. Ertinger died on August 28, 1977. His estate now continues this action. In the early 1970's, LB&M was under pressure from the New York Stock Exchange to remedy its inadequate capitalization by merger or otherwise obtaining new capital. On March 9, 1973, LB&M and Dean Witter & Co., Inc., executed a memorandum of understanding outlining the terms of a proposed merger of the two corporations. On April 2, 1973, LB&M and Dean Witter executed a merger agreement under the terms of which LB&M was merged into Dean Witter which became the surviving corporation. Paragraph 8 of the memorandum of understanding contained the following language with respect to pension payments authorized by LB&M to its retired employees: "the Company surviving the merger * * * will continue the special arrangements made with existing and future retired employees of LB&M to the extent agreed upon by the parties." The merger agreement contains no specific provision regarding the pension payments. Nor does it contain an integration clause or in any way evince an intent that the provisions of the memorandum of understanding be subsumed into the merger agreement. The merger agreement does contain the general language of the governing law, subdivision (a) of section 259 of the Delaware Corporation Law, which provides in pertinent part: "[A]ll rights of creditors * * * of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." By letter dated April 4, 1973, defendant Boyer, a director of Dean Witter, informed Ertinger that under the terms of the merger no provision could be made to continue the pensions of retired directors of LB&M, and that accordingly no further payments would be made. In 1975, Ertinger instituted this suit after learning that Dean Witter was making pension payments to John J. P. Murphy, another retired LB&M director. Murphy's pension rights, however, arise from a letter agreement dated March 23, 1967, which was authorized by a different board resolution from that which authorized pensions for all retired LB&M directors under which Ertinger asserted his right. The Murphy letter agreement, approved by a resolution of the LB&M board on March 15, 1967, by its terms pertains only to Murphy. Under that letter agreement, Murphy would resign as a director but remain as a registered representative at an annual salary of $25,000, plus commissions, until such time as he chooses to retire at an annual pension of $18,000. Both the Murphy agreement and the 1968 resolution authorizing pensions for all retired LB&M directors contain substantially identical language as follows: "If in any particular month the Corporation's income shall be insufficient to pay such pension and officers' salaries as herein provided, such pension shall be reduced pro rata with any reduction in officers' salaries * * * Notwithstanding any provision hereof, in the event that the broker-dealer business presently being conducted under the name and good will of the Corporation shall cease by reason of liquidation of the Corporation or any successor firm, whether voluntary or involuntary, the liability hereunder to you shall cease." The 1968 resolution, however, contained the following language not found in the Mur-

phy agreement: "[i]n the case of merger, the firm would attempt to have the pension continued, but could not, of course, guarantee that this would be the case." Dean Witter, upon advice of counsel, determined that the Murphy agreement was a binding debt undertaken by LB&M which Dean Witter was required to assume under the statutory merger, but that the pension rights created under the 1968 resolution were defeasible as provided in the event of merger and were to be a subject of negotiation. Inasmuch as the merger agreement contained no specific provision regarding assumption of the directors' pension obligations, although the memorandum of understanding recited that the pension obligations would be assumed only to the extent agreed upon by the parties, the Trial Justice, in light of this ambiguity, properly considered extrinsic evidence of the parties' negotiations and prior writings to ascertain their intent with respect to the pension obligation at the time they entered the merger agreement. (*Lamb v Norcross Bros. Co.,* 208 NY 427; *Broadway Maintenance Corp. v City of New York,* 19 AD2d 96.) In *Lamb* (p 431), the Court of Appeals stated the rule as follows: "when the sense in which the words of a written instrument are used, or the sense in which the promisor had reason to believe the promisee understood them, is determinable from the relation of the parties, facts apart from it, and the surrounding circumstances, it must be found and fixed by the jury". In *Broadway Maintenance Corp.,* this court stated (p 99) " '[e]ven in the case of an integrated written contract, the meaning of the words may depend upon various surrounding circumstances that are in dispute; the circumstances must be found as a fact before interpretation can proceed' ". Appellants argue that the trial court improperly considered evidence extrinsic to the merger agreement to determine the parties' intentions, invoking the familiar rule that where a contract is clear and unambiguous its construction is a matter of law to be decided from the instrument itself. (See *West, Weir & Bartel v Carter Paint Co.,* 25 NY2d 535, 540; *Leitman v Baldwin,* 57 AD2d 944.) The rule urged by appellants, however, has no application to an incomplete contract which falls within one of the limited exceptions to the parol evidence rule. In *Thomas v Scutt* (127 NY 133, 138), the Court of Appeals stated the rule as follows: "The writing must not appear upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, for in such a case it is conclusively presumed to embrace the entire contract." Applying the foregoing to the merger agreement, it can hardly be said that the merger agreement contains all the particulars necessary to make a perfect agreement inasmuch as the agreement is silent regarding assumption of the directors' pension obligations. Moreover, in the absence of an integration clause it cannot be said that the merger agreement is designed to express the whole arrangement between the parties. After denying earlier cross motions for summary judgment at Special Term, Justice Helman conducted a nonjury trial and dismissed the complaint, with prejudice. The evidence presented during the trial, and the affidavits submitted in connection with the cross motions for summary judgment, demonstrated that Dean Witter never intended or agreed to assume the pension obligations. Former directors of LB&M who negotiated the merger testified that Dean Witter flatly refused to assume the pension obligations on the ground that Dean Witter did not provide pensions for its own retired directors. The former LB&M directors felt that, although they pressed the point, insistence would have caused the merger negotiations to fail which would have been unacceptable to LB&M which was in a weak bargaining position and under pressure from the New York Stock Exchange. The court also admitted two documents probative of Dean Witter's intent. The first, an unexecuted letter agreement

from Dean Witter to LB&M, states with respect to the pension agreements referred to in the memorandum of understanding: "These arrangements will be made with not exceeding 15 retired employees and the maximum payment to any such employee shall not exceed $300 per month." The second is the letter Dean Witter sent to Ertinger two days after the merger informing him that under the terms of the merger the directors' pensions could not be continued. How Dean Witter construed the agreement immediately after its execution is probative of its intent upon entering the merger agreement. (Cf. *Webster's Red Seal Pub. v Gilberton World-Wide Pub.*, 67 AD2d 339.) Special Term correctly denied Ertinger's earlier motion for summary judgment, citing questions of fact regarding the intentions of the parties with respect to the pension obligations. Special Term aptly described Ertinger's pension right as a conditional right, subject to contingencies that might frustrate it, and with no guarantee of future performance. In addition to the existence of questions of fact, Special Term relied upon the rule of *Folinsbee v Sawyer* (157 NY 196, 199), to prevent Ertinger, a nonparty to the merger agreement, from invoking the parol evidence rule to bar respondents' proofs. The exception to the *Folinsbee* rule stated by the Court of Appeals in *Oxford Commercial Corp. v Landau* (12 NY2d 362), relied upon by the dissent, applies, in the language of the Court of Appeals, to fully integrated agreements. The merger agreement is at best only a partial integration. Even allowing plaintiff to invoke the parol evidence rule, it would be of no avail. The merger agreement is silent regarding any assumption of the pension obligations. Thus, there is no term of the merger agreement that would be varied or contradicted by the parol evidence that Dean Witter elected not to assume the pension payments. Inasmuch as the resolution creating the pension payments contemplated the possibility of defeasance in the event of merger and declined to guarantee the continuation of payments should LB&M merge, it cannot be said as a matter of law that the pension obligations constituted a debt within the meaning of subdivision (a) of section 259 of the Delaware Corporation Law which Dean Witter was statutorily obligated to assume, especially in light of the intent evinced by the memorandum of understanding that pension obligations would be assumed only to the extent agreed upon. The obligation of LB&M with respect to the pensions in the event of a merger was to attempt to have the payments continued. When the directors created the pensions, they contemplated the possibility of merger and did not wish to render their corporation a nonviable merger candidate by saddling it with long-term unfunded pension debt. Thus they provided that continuation of that debt would be a subject for negotiation in the event of merger. The obligation of LB&M was discharged with respect to the pension payments when they attempted, though without success, to have the payments continue after the merger. Therefore, no debt remained on the part of LB&M which subdivision (a) of section 259 of the Delaware Corporation Law would require Dean Witter to assume. Accordingly, the judgment of the Supreme Court, New York County (Helman, J.), entered after a nonjury trial on September 18, 1981, which dismissed the complaint with prejudice, should be affirmed, without costs.

Sandler, J. (concurring). I agree that Special Term correctly dismissed the complaint in this action although I am not persuaded that the corporate resolution in question was ambiguous. The dispositive language in the resolution was the sentence, "In the case of merger, the firm would attempt to have the pension continued, but could not, of course, guarantee that this would be the case". The clear meaning of this language, in my opinion, is that no obligation was assumed with regard to the payment of the pension after merger except the obligation to "attempt to have the pension continued". That undertaking appears clearly to have been fulfilled.

Murphy, P. J. (dissenting). Plaintiffs appeal from a final judgment of the Supreme Court, New York County (Helman, J.), entered September 18, 1981, which dismissed the complaint after a nonjury trial. The appeal from that final judgment brings up for review any order which necessarily affects it (CPLR 5501, subd [a], par 1). Therefore, upon this appeal, the order of the Supreme court, New York County (Helman, J.), entered March 17, 1977, denying Ertinger's motion and Dean Witter's cross motion for summary judgment, will be reviewed. (*Matter of Neuner v Weyant,* 63 AD2d 290, app dsmd 48 NY2d 975.) In seeking summary relief, Wolfram L. Ertinger, now deceased, submitted an affidavit stating that he had been a vice-president and director of Laird, Bissel & Meeds, Inc. (Laird). On April 4, 1968, Laird's board of directors passed a corporate resolution which provided for retirement pay of $18,000 per year for a director. To the extent here relevant, the resolution provided: "Notwithstanding any provision hereof, in the event that the broker-dealer business presently being conducted under the name and good will of the Corporation shall cease by reason of liquidation of the Corporation or any successor firm, whether voluntary or involuntary, the liability hereunder to you shall cease. In the case of merger, the firm would attempt to have the pension continued, but could not, of course, guarantee that this would be the case". Ertinger retired on March 31, 1972 at the mandatory retirement age of 70. In accordance with the corporate resolution of April 4, 1968, he received a monthly pension payment from April 1, 1972 until March 31, 1973. On April 2, 1973 Laird merged into Dean Witter & Co., Inc. (Witter), because of pressing financial problems. Section 1 (b) (ii) of the merger agreement provides, in part, as follows: "(ii) All rights of creditors and all liens upon any property of the Constituent Corporations * * * shall attach to the Surviving Corporation and may be enforced against it to the same extent as if such debts, liabilities and duties had been incurred or contracted by it, all to the extent and as provided in Section 259(a) of the Delaware General Corporation Law". In a letter dated April 4, 1973, Witter terminated Ertinger's pension payments. It was Ertinger's contention upon the motion that Witter was fully responsible for the payment of his pension benefits since that obligation was extant at the time of the merger. In support of its cross motion for summary judgment, Witter submitted affidavits from various officers in Laird and Witter. Each of the officers averred that Witter did not, as part of the merger, assume the obligation to pay a pension benefit under the corporate resolution of April 4, 1968 to retired directors, such as Ertinger. Special Term denied the parties' motions for summary judgment. It found that Ertinger could not avail himself of the parol evidence rule in view of the fact that he was not a party to the merger agreement. (*Folinsbee v Sawyer,* 157 NY 196, 199.) The court otherwise found that factual issues existed as to the intent of the parties with respect to the pension plan at the time of the merger. Special Term's reliance upon the *Folinsbee* case was misplaced. The Court of Appeals in *Oxford Commercial Corp. v Landau* (12 NY2d 362) limited the holding in the *Folinsbee* case. Specifically, the highest court stated (12 NY2d, at pp 365-366): "It is too well settled for citation that, if a written agreement contains no obvious or latent ambiguities, neither the parties nor their privies may testify to what the parties meant but failed to state. Although it is sometimes broadly observed that the parol evidence rule has no application to any except parties to the instrument (see, e.g., *Robert* v. *United States Shipping Bd. Emergency Fleet Corp.,* 240 N. Y. 474, 478; *Folinsbee* v. *Sawyer,* 157 N. Y. 196, 198-199), it is clear that in the case of a fully integrated agreement, where parol evidence is offered to vary its terms, the rule operates to protect all whose rights depend upon the instrument even though they were not parties to it". The language in

the merger agreement was very clear. All debts and liabilities of Laird were attached to Witter and could be enforced against Witter as if such debts and liabilities had been incurred by Witter. Those debts and liabilities were to be enforced under the provision of subdivision (a) of section 259 of the Delaware Corporation Law. Hence, Special Term should have rejected the parol evidence offered by Witter to contradict and vary the straightforward terms of the merger agreement (*Thomas v Scutt,* 127 NY 133, 137). Laird's board of directors had never rescinded the resolution of April 4, 1968. Consequently, the pension benefit was a debt and obligation assumed by Witter. Thus, the order of the Supreme Court, New York County (Helman, J.), entered March 17, 1977, should be modified, on the law, by granting Ertinger's motion for summary judgment on the first cause of action against Witter. That first cause should, accordingly, be remanded for an assessment of damages. Hence, a trial was only needed to resolve the remaining causes of action. Wolfram Ertinger died before the commencement of trial; his executors prosecuted the case on his behalf. It is the defendants' contention that the plaintiff executors waived their right to enforce the parol evidence rule by failing to object to the testimony of the defense witnesses at trial. The appendix submitted supports defendants' contention that no formal objection to the defense testimony was taken on that specific ground. The parol evidence rule is one of substantive law (22 NY Jur, Evidence, § 599, p 111). No effect can be given to testimony concerning prior or contemporaneous discussions if the trial court is asked in due form to instruct the jury that the discussions were merged in the written agreement. (*Loomis v New York Cent. & Hudson Riv. R.R. Co.,* 203 NY 359, 367.) This case was tried by the court without a jury. It should be stressed that the trial court had previously ruled, upon the parties' motions for summary judgment, that the parol evidence rule was not applicable to this proceeding. Therefore, any formal objection taken by plaintiffs at trial to the defense testimony would have been futile. Despite the plaintiffs' failure to object to the defense testimony varying and contradicting the clear terms of the merger agreement, it is evident from the appendix that the trial court was actually cognizant of plaintiffs' continuing objection to that parol evidence. In its oral decision after trial, the court stated: "It has been contended here by the plaintiff that the use of the merger agreement of the term 'all debts, liabilities, and duties' automatically observed an obligation to pursue the responsibilities of the May 4, 1968 resolution adopted by LBM and that at the time that the merger agreement was signed, some five years later, the Dean Witter Company automatically became responsible for the terms and provisions of that resolution. In that regard, the Court has permitted parol evidence on both sides for the purpose of having any explanation that could be offered by either side as to the intent and meaning of the quoted words 'all debts, liabilities, and duties of the constituent corporation' explained". Thus, at the end of this nonjury trial, the court was fully aware that plaintiffs were exclusively relying upon the merger agreement to support their case. Implicitly, plaintiffs were advancing the parol evidence rule and it is apparent from the court's language that it realized that fact. Had a trial been necessary to resolve the first cause, the parol evidence rule would have compelled a determination on that cause in plaintiffs' favor. It should be noted, in passing, that plaintiffs never violated that rule at trial. The proof adduced by plaintiffs, including their Exhibits Nos. 13 and 14, in no way varied or contradicted the critical terms of the merger agreement. With regard to the second, third, fourth and fifth causes of action, plaintiffs' proof at trial was totally deficient. Consequently, those causes were correctly dismissed against all the defendants. However, to reflect the grant of summary judgment on the first cause, the final judgment of the Supreme Court, New York County

(Helman, J.), entered September 18, 1981, should be modified, on the law, to reinstate the first cause against Witter and to remand that matter for an assessment of damages. The final judgment, as modified, should otherwise be affirmed.