■ GUY W. HART et al., Appellants, v KINNEY DRUGS, INC., Respondent. [888 NYS2d 297]—

Rose, J. Appeals (1) from an order of the Supreme Court (Garry, J.), entered October 22, 2008 in Madison County, which, among other things, partially denied plaintiffs' motion to quash a subpoena duces tecum and for a protective order, and (2) from that part of an order of said court, entered February 10, 2009 in Madison County, which denied plaintiffs' motion to renew.

Between 1993 and 1999, the parties entered into leases covering 28 properties where defendant (hereinafter the tenant) operated drugstores. For each store, the tenant agreed to pay plaintiffs (hereinafter the landlords) a "fixed rent" as well as a "percentage rent" equal to a specified percentage of the store's gross receipts above a certain threshold. In 2002, following renegotiation of the amounts to be paid for eight of the stores, the parties executed a brief letter describing itself as a "memorandum of understanding amending the various leases" (hereinafter the memorandum). For five of the eight stores, the memorandum set forth a new "base rent" in the same amount as the former fixed rent, limited the leases' percentage rents—referred to in the memorandum as "overage rents"—by capping them at a maximum of one half of the base rent, and added an annual increase in base rent of one percent per year to be triggered if the cap is reached. For the other three stores, the memorandum provided a new, significantly higher base rent and added an automatic annual increase of one percent per year without a trigger or any mention of either overage or percentage rents. Following execution of the memorandum, the tenant paid no percentage rent for the three stores and the landlords took no action to collect it for more than 5½ years.

In 2007, after relations between the parties had deteriorated and the tenant brought an action against two of the landlords' principals, the landlords commenced this action alleging that, among other things, the tenant had breached the parties' agreements by failing to pay percentage rents for the three stores. The tenant answered that the memorandum had terminated its obligation to pay percentage rents for those stores and served a subpoena for the records of the landlords' bank. When the landlords moved to quash the subpoena, the tenant cross-moved for summary judgment dismissing the cause of action.

Finding the memorandum to be ambiguous as to whether the tenant was obligated to pay percentage rents for the three stores, Supreme Court denied the tenant's cross motion and partially denied the landlords' motion to quash by greatly narrowing the scope of the tenant's subpoena. The landlords then moved to renew the motion to quash the subpoena in its entirety and attempted to present a further "Global Lease Agreement" in support of its position. That motion also was denied. The landlords now appeal from Supreme Court's orders, contending that the memorandum is not ambiguous since it is silent as to percentage rents for the three stores and, therefore, the lease terms regarding percentage rents remain unchanged. The landlords argue that, in the absence of any ambiguity, the information sought by the tenant's subpoena is extrinsic evidence that cannot be considered in construing the memorandum.

There can be no real dispute that the tenant's subpoena seeks extrinsic evidence. Inasmuch as extrinsic evidence of the parties' intent may be considered only if their agreement is ambiguous (see Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; R/S Assoc. v New York Job Dev. Auth., 98 NY2d 29, 33 [2002]), the landlords' motion to quash necessarily depends upon whether the memorandum is ambiguous. It is well settled that "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). In addition, while "silence does not equate to contractual ambiguity" (Greenfield v Philles Records, 98 NY2d at 573; see Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]), an omission as to a material issue can create an ambiguity and allow the use of extrinsic evidence where the context within the document's four corners suggests that the parties intended a result not expressly stated (see Louis Dreyfus Energy Corp. v MG Ref. & Mktg., Inc., 2 NY3d 495, 500 [2004]; Barrow v Lawrence United Corp., 146 AD2d 15, 18-19 [1989]).

Here, although the memorandum is silent as to whether the tenant would be required to pay percentage rents for the three stores, its provisions reflect an intent to amend the original leases and create new rent structures for all eight properties. For the five stores, the memorandum continued the same base rents, but modified the lease provisions as to percentage rents by capping them at what is now termed "overage rent," thereby limiting the total amount that the tenant must pay. As for the three stores, the memorandum sets forth a greatly increased "new base rent." The tenant contends that this increase was

intended to offset and compensate the landlords for the complete elimination of percentage rent for those three stores, while the landlords assert that the purpose of the increase was to offset and compensate them for the limits placed on the overage rent for the five stores. Upon considering this contention by the landlords, however, we note that the memorandum does not explain the parties' intent in giving a reduction in rents on the one hand while appearing to take that reduction away on the other, rather than simply negotiating whatever net amount of rent they intended for the five stores alone. This anomaly within the four corners of the memorandum suggests the possibility that there was to be a provision eliminating percentage rents for the three stores.

Further suggestion that such a provision is missing is found in the memorandum's description of the annual one percent increase for the three stores as being imposed upon "rent," rather than upon "base rent" as it is for the five stores, suggesting that the parties had no need to distinguish the various types of rent for the three stores because there would no longer be percentage or overage rent for them. In addition, the three stores' provision has no triggering event for the annual increases, suggesting that there would be no form of percentage rents, as there are for the five stores, to serve as a trigger. Further, the memorandum provides that two years of additional rent for all eight stores would be payable in the event that the tenant elected not to renew the leases. While the reduction in rent for the five stores would explain why the tenant would agree to these two additional years of rent as to them, there would be no apparent consideration for that term with respect to the three stores if their percentage rents were to continue unchanged (*see Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 459-460 [1989]; *Citibank v Rice Aircraft*, 178 AD2d 118, 120 [1991]).

Inasmuch as the memorandum can be read as providing either a new, increased single rent term that replaced the prior base and percentage rents for the three stores, as the tenant claims, or new, increased base rents in addition to the existing percentage rents, as the landlords claim, it is ambiguous. In view of the questions raised by the memorandum's inconsistent treatment of these two groups of stores, unexplained within its four corners, Supreme Court properly determined that extrinsic evidence is needed to determine the parties' intent in executing it (*see Louis Dreyfus Energy Corp. v MG Ref. & Mktg., Inc.*, 2 NY3d at 500; *Belknap v Witter & Co.*, 61 NY2d 802, 804 [1984], *affg* 92 AD2d 515 [1983]; *State of New York v Industrial Site*

*Servs., Inc.*, 52 AD3d 1153, 1156 [2008]; *Barrow v Lawrence United Corp.*, 146 AD2d at 18).

Given that ruling, Supreme Court also did not abuse its discretion in permitting disclosure of the landlords' records held by a nonparty to the extent that they could reveal the parties' *intent* in executing the memorandum. The tenant sufficiently demonstrated that the information which it sought was material and necessary. Further, the court carefully limited the scope of disclosure to shield confidential financial information, making it unnecessary for the tenant to show that the information is indispensable (*see generally Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406-407 [1968]; *Jordan v Blue Circle Atl.*, 296 AD2d 752, 752-753 [2002]; *cf. Saratoga Harness Racing v Roemer*, 274 AD2d 887, 889 [2000]).

Finally, in light of the landlords' failure to adequately explain the omission of the Global Lease Agreement from their submission on the parties' initial motions, Supreme Court did not abuse its discretion by denying the motion to renew (*see Matter of Mouawad*, 61 AD3d 1169, 1169-1170 [2009]; *Kahn v Levy*, 52 AD3d 928, 929 [2008]).

Spain, J.P., Lahtinen, Malone Jr. and Kavanagh, JJ., concur. Ordered that the orders are affirmed, with costs.