CITY OF NEW YORK, Respondent, *v.* NEW YORK CENTRAL
RAILROAD COMPANY et al., Appellants.

Argued May 19, 1937; decided July 13, 1937.

288

*Kenneth O. Mott-Smith* and *Clive C. Handy* for appellants. The facts pleaded in the fourth separate defense state a good defense of illegality. (*Burns* v. *Lopez*, 256 N. Y. 123; *Reddington* v. *Elco Corp.*, 236 App. Div. 64; *Corporation* v. *Mayor*, 5 Cow. 538; *People* v. *Globe Mut. Life Ins. Co.*, 91 N. Y. 174; *Buffalo East Side R. R. Co.* v. *Buffalo Street R. T. Co.*, 111 N. Y. 132; *Meade* v. *Lamarche*, 150 App. Div. 42; *Railroad Comm.* v. *Southern Pacific Co.*, 264 U. S. 331.) The facts pleaded in the fourth separate defense state a valid reason why a decree of specific performance should be denied by a court of equity in the exercise of its discretion. (*Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22.)

*Paul Windels*, Corporation Counsel (*Herman Horowitz* and *William G. Mulligan, Jr.*, of counsel), for respondent. The fourth defense was properly stricken out. (*Matter of Staten Island R. T. Ry. Co.*, 220 App. Div. 80; 245 N. Y. 643; 276 U. S. 603; *Missouri-Kansas-Texas R. R. Co.* v. *Mars*, 278 U. S. 258.) Even if separately pleaded an allegation that there is no need for the station would not constitute a valid defense. (*City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463; *Village of Fort Edward* v. *Hudson Valley Ry. Co.*, 192 N. Y. 139; *Matter of Staten Island Ry. Co.*, 220 App. Div. 106; *Public Service Comm.* v. *Westchester Street R. R. Co.*, 206 N. Y. 209.)

RIPPEY, J. Plaintiff asserts that this is an action to compel defendants specifically to perform an alleged contract by which, it is said, defendants agreed (1) to construct a station in the vicinity of East One Hundred and

Forty-ninth street and Park avenue in the borough of the Bronx according to plans proposed by defendants and approved by the Board of Estimate and Apportionment of the City of New York, and (2) to reimburse plaintiff in the sum of $55,000 for moneys advanced by plaintiff in 1919 for the construction of certain underground passageways in that vicinity and referred to in those plans and completed by the city on April 30, 1921, in the event that it should be determined that the defendants were obligated to construct such passageways at their own expense. Defendants admit the making of the contract and that plaintiff has duly performed, but deny that they agreed to construct a station. They put in issue the question of their obligation to pay the $55,000, plead the six, ten and twenty-year Statutes of Limitation as bars to the maintenance of the action and set up a fourth separate defense, to which later reference will be made. The latter defense was stricken out by the Special Term on motion by plaintiff. Upon appeal, the Appellate Division affirmed by a divided court and certified to us the question as to whether the defense is sufficient in law.

By chapter 558 of the Laws of 1909 (in effect May 28, 1909), the Legislature of the State of New York authorized and empowered the city of New York to grant to defendants, by suitable instruments in writing, the right to occupy and use for the purpose of their incorporation and during their corporate existence certain underground areas for track and station facilities in the neighborhood of One Hundred and Forty-ninth street and Park avenue in the city of New York upon such consideration as the city, acting by its Board of Estimate and Apportionment, might arrange, and imposed upon the New York Central and Hudson River Railroad Company the duty of submitting to the Board of Estimate and Apportionment of the city plans and profiles showing the proposed location of its tracks and structures and all proposed alterations or changes or modifications of grade in such lands or

streets; approval of any such plans was required to be made by the Board of Estimate and Apportionment, to be evidenced by a resolution of the Board duly certified by the Mayor and Comptroller of the city of New York and, when so approved, they were to be deemed duly authorized and the street maps to be changed accordingly. The act was purely permissive and did not expressly determine that public convenience and necessity required the changes contemplated or the erection of a station at or in the vicinity of One Hundred and Forty-ninth street in New York city. Under the authority of the act, the defendants submitted plans and the Board of Estimate and Apportionment approved and agreements were entered into. The four written instruments out of which the alleged contract in suit arose were dated respectively June 8, 1911; November 6, 1916; and February 15, 1917, and July 26, 1917. By the terms of the contract it was agreed that defendants should pay to the city the sum of $55,000 in case of a final adjudication in favor of the city upon an agreed statement of fact, which reads as follows: " Whether the Central Company (as successor of the New York Central and Hudson River Railroad Company) is obligated to the City under the agreement of 1911 to construct at its own expense, the portion of the passageway shown on the plans of 1911, between the easterly line of Spencer Place and the east limits of the present Mott Avenue Station platforms as shown on the plans of 1911, even if the Central Company should not desire the construction of such passageway? "

There is no allegation in the complaint that any such question has ever been submitted to any court or that any such adjudication has been had. There is no express agreement by the defendants to erect any station. Whether there is any implied agreement so to do cannot be decided until all the facts are before the court.

The plaintiff is a municipal corporation and as such has no power to determine whether public convenience and necessity require erection of a station by defendants

or to compel the erection of the station if public convenience and necessity so require. That is a legislative function and has been delegated generally to the Public Service Commission. Plaintiff does not allege that the Legislature delegated that function to the city to perform. It may be claimed by the city that the Legislature determined by the 1909 act that public convenience and necessity then required the construction of a station and made the city its agent to carry through the detail. Whether such a claim could be sustained, if made, we do not decide. In any event, there is nothing in the act of 1909 which delegated to the city the duty or power to enforce on behalf of the State the erection of the station at One Hundred and Forty-ninth street.

Any contract here sought to be enforced was complete in all its terms not later than 1917. So far as any action to compel defendants to perform is concerned, it has been a dead letter for at least twenty years. The court may take judicial notice of the fact that traffic conditions and means of handling traffic in the city of New York have radically changed in the past twenty years. It is alleged by defendants in the fourth separate and distinct defense that since the completion of the contract an act has been passed by Congress that has changed the conditions under which any financing may be undertaken and approved and that it will now require the defendants to secure the approval of the Interstate Commerce Commission before they can issue the necessary securities for financing a new station. Section 20 (a) of the Transportation Act, enacted February 28, 1920 (41 U. S. Stat. 494; U. S. Code, tit. 49, § 20a), does not render the contract illegal. At most it renders the contract unenforceable until permission should be given to issue and sell securities to obtain funds with which to erect the station. This, standing alone, would not be a sufficient or complete defense to the action for specific performance, but it is a material fact on the question of change of conditions and the manner in which the court should exercise its

discretion in the event it should decree performance. It is alleged that operating conditions now render it impossible for defendants to stop trains at One Hundred and Forty-ninth street and that erection of the station and the stoppage of trains at that point would now be a public detriment, even though it might have been of public convenience and necessity between 1909 and 1917. Had an order been made in 1917 by the Public Service Commission, even with the consent of the defendants, and permitted to lie dormant for eighteen years and then revived, that body would now be required to take and consider new proofs submitted by defendants on all matters alleged in the defense before it could require enforcement of its ancient order. It might appear that conditions had so changed in the interval as to render performance unduly burdensome or impossible or that public convenience and necessity no longer demanded compliance. If the city may claim that it is acting in behalf of the public, defendants should be permitted to submit the facts alleged in this defense to the court on the question of whether the contract, if any, should be enforced.

But in this action, so far as enforcement is concerned, the city is not authorized to act as agent of the State. It is acting, or pretending to act, in its private capacity for the enforcement of private rights, and the rules applicable in actions for specific performance may be deemed to be those applicable as if the action were between private individuals. The action is to specifically enforce the contract to which reference has been made. The defendants agree that that is the nature of the action. The agreement which it is sought to enforce was complete, in all its terms, as above stated, not later than July 26, 1917. If the city were not then in a position to compel performance of the contract by suit, it surely was entitled to bring its action on April 30, 1921, which was the date when it asserts it had completely performed all of the conditions on its part to be performed. Even though a contract fixes no time for performance, if not

void for uncertainty, an agreement is implied that the act shall be done within a reasonable time. (*Horner* v. *Clark*, 27 Ind. App. 6; *Williams* v. *Hart*, 116 Mass. 513.) Suit was not instituted until May 6, 1935.

It is a cardinal rule that in an action to specifically enforce a contract the one seeking enforcement must act promptly. (*Delavan* v. *Duncan*, 49 N. Y. 485, 488.) Unexplained delay is evidence of waiver and acquiescence in non-performance. (*McLaurie* v. *Barnes*, 72 Ill. 73, 77.) Even though the delay should not be held to be sufficient to amount to an abandonment, the situation of the parties may have radically changed during the period between the time that the right to enforce arose and the time of bringing of the suit. That hardship and injustice to defendant through change of circumstances would result may be sufficient ground, especially when accompanied by unreasonable delay, to require a court of equity to refuse to decree specific performance, and this may be the result even though the action is brought before the time arrives when the Statutes of Limitation pleaded as defenses may bar the suit. (*Peters* v. *Delaplaine*, 49 N. Y. 362, 367.) As said by Chief Judge CHURCH in that case: " The granting or withholding specific performance is within the discretion of the court, and it will not be granted when it would be against conscience and justice to do so. * * * The question * * * must be decided in each action, although brought within the statutory limit as to time, whether under the peculiar circumstances equity and good conscience require that the contract shall be specifically performed or whether the party should be left to his remedy at law for the non-performance." The circumstances in the case at bar are out of the ordinary and are without precedent. Plaintiff seeks to require specific performance of two separate parts of the contract only. One of those affects public rights, but plaintiff proceeds as though it were a private right to be enforced. The defendants allege that the circumstances have so changed since the

contract was executed that public convenience and necessity do not require the erection of a station at One Hundred and Forty-ninth street, that the stoppage of trains at such a station would be impossible without serious interference with the proper and efficient operation of defendants' railroads, that to erect a station there would now work injury to the public interests, that specific performance would injure both parties and benefit neither, and, in any event, legislation enacted subsequent to the contract renders it unenforceable. If those facts are established on the trial, the court might properly withhold relief from plaintiff or grant it upon conditions in accord with the requirements of justice and equity.

The question of whether the facts set up in the fourth separate defense must be pleaded to be available to defendant might be answered in the negative if this were an ordinary action for specific performance and damages might be substituted for the breach of the contract (*Miles* v. *Dover Furnace Iron Co.*, 125 N. Y. 294, 298), or if plaintiff were seeking to get property back which was transferred to defendants as consideration for their erecting a station. But this is not such a case. The facts alleged are not a defense to the action to recover the item of $55,000. We think they may be held to be a complete defense against the requirement to erect the station under the peculiar situation existing in this case and should be pleaded to be available to defendants.

The orders should be reversed and the motion denied, with costs in all courts, and the question certified answered in the affirmative.

LEHMAN, J. (concurring). Pursuant to chapter 558 of the Laws of 1909 and for the purpose of enabling the defendant railroad companies to relocate their railroad tracks and to erect a railroad station in the vicinity of Park avenue and One Hundred and Forty-ninth street in accordance with plans and profiles previously prepared and approved, the city of New York entered into an

agreement with the railroad companies whereby the city granted to the railroad companies certain real property, easements and subsurface rights. Alleging that by " the foregoing acts and transactions defendants undertook and agreed to construct a passenger station in accordance with the said plans and profiles," the city has brought this action in equity to compel the defendants to carry out this agreement and to erect the station. Incidentally they ask also for the recovery of $55,000 which under the terms of the agreement the defendants concededly are now obligated to pay to the city.

The defendants have pleaded, as an affirmative defense, that the construction of the railroad station would entail an expense of at least five million dollars, which could be raised only by the issue of new securities, and that authorization of the Interstate Commerce Commission for such issue could not be obtained without proof that such issue would be in the public interest. That in fact neither public interest nor convenience now require that such a station should be erected. That it would not be practicable to stop trains at One Hundred and Forty-ninth street without detriment to the efficiency of the service now rendered by the companies. That their revenue has now so shrunk that they cannot assume the added indebtedness which would be required for the erection of the station. The plaintiff has challenged the sufficiency of the defense.

In testing the sufficiency of a defense, the complaint must also be searched. The defense would be an insufficient answer to an action to recover the $55,000 which the defendants are obligated to pay. In this action, however, recovery of that money is asked, as already said, only as an incident to equitable relief. Upon the argument of the appeal, the plaintiff so conceded. If equity cannot compel specific performance of the alleged agreement, the plaintiff does not maintain that it is entitled to a money judgment in this action. (Cf. Pomeroy on Equity Jurisprudence [3d ed.], § 237,

pp. 342, 343, n. 3; *Sternberger* v. *McGovern*, 56 N. Y. 12, 20.) Both parties seek a determination of the sufficiency of the plea as a defense to the equitable cause of action. If sufficient for that purpose, it may not be sustained because it would be insufficient in a different form of action for minor relief.

Arguments, not without force, might be made that the challenged defense would be insufficient if addressed to a cause of action for specific performance of an ordinary contract between private persons which does not seriously affect public interests. The alleged agreement in this case is of a different character. A railroad company performs a public function subject to public regulation. The State or United States, as the case may be, determines through its officers whether a station shall be constructed and where it may be located. A railroad company cannot by contract with the city assume an obligation, which the courts will specifically enforce, unless or until the proper public authorities have approved. Even then the courts act, not because a person or corporation seeks their aid, but because the State, in the public interest, so demands. The Public Service Commission, as agent of the State, is authorized to issue commands and to take steps to enforce them. The city has no such powers. It is acting here in a private capacity. It asks the courts to compel the railroad company to carry out a private contract, not a public duty.

It is said that chapter 558 of the Laws of 1909, which authorized the railroad companies and the city to enter into an agreement for the acquisition by the companies of franchises and rights required for the relocation of the tracks and the construction of the station, constitutes legislative authority for the assumption of a contractual obligation to construct the station and a legislative determination of necessity and convenience. Assuming, though only *arguendo*, that such construction is justified, it would not follow that the contractual obligation would be specifically enforced at the suit of the city. In the

years which have passed since the making of the contract, a public policy that railroad companies must operate their railroads in accordance with public convenience and necessity and are subject to the supervision and direction of commissions established for that purpose, has become embodied in the statutes of this State. Even if the railroad company has assumed by contract made more than twenty years ago a legal obligation to construct a station, the obligation will not be enforced unless the station will promote the public convenience *now*. The function of determining such questions has been intrusted, by the State and by the United States, to appropriate commissions. They and not the courts must pass upon such questions in the first instance.

The courts in such case must refuse specific performance not because in the exercise of discretion they deny equitable remedy for legal wrong, nor because the Legislature has limited or withdrawn a jurisdiction which the courts would otherwise have. It is because the Legislature has paramount power, except as limited by the State or Federal Constitutions, to regulate the operation of a railroad within the State, and the courts do not give commands which might conflict with regulatory measures of the State. If a private person attempted to enforce in an action in equity an obligation created for his benefit by contract with the railroad company, though such obligation might conflict with the public convenience, it would be evident that such action would not lie. There is no difference in principle where the city brings a similar action. To such an action the defense pleaded is sufficient, though it might be insufficient to a cause of action with more substance. " A bad answer is good enough for a bad complaint." (*Baxter* v. *McDonnell*, 154 N. Y. 432, 436.)

For these reasons I agree that the orders of the courts below should be reversed and the motion denied. Certified question answered in the affirmative.

FINCH, J. (dissenting). The New York Legislature in 1909 authorized the city of New York to grant the defendant railroads such franchise rights as might be reasonably required for suitable track and station facilities in the vicinity of One Hundred and Forty-ninth street in New York city. Pursuant to this legislation, the railroads submitted plans and in 1917 these plans were approved by the city, and an agreement was entered into between the city and the railroads confirming the franchise obligation and providing that the railroads should pay the city $55,000 in the event of a final adjudication in favor of the latter upon an agreed statement of facts. Since 1917 the defendants have failed to construct the station. Nor has the $55,000 been paid. Finally, in 1935, the city instituted this suit for specific performance and to recover the $55,000. An answer was interposed by the defendants and, on a motion by the city, the Special Term struck out the fourth separate defense. The Appellate Division has affirmed and certified to this court the general question whether that defense is sufficient in law.

I believe that the Special Term and the Appellate Division have reached the correct result in granting the motion to strike out the fourth separate defense. Courts should not construe pleadings too strictly, especially on motions to strike out, but where the matter pleaded in an answer does not under any construction constitute a defense, the plaintiff is entitled to have it struck out.

The fourth defense is pleaded as a complete defense to the cause of action, yet admittedly it does not constitute a defense to the demand for judgment for the $55,000. This alone furnishes sufficient ground for affirming the decision already reached.

Turning, however, to a consideration of the defense as applied to the demand for specific performance, again it is found to be inadequate. It contains three separate elements: *First*, that the funds which the defendants will need for the erection of the station can be raised only

by the issuance of securities and that under Federal statute such securities cannot be issued without obtaining the permission of the Interstate Commerce Commission, which permission will not be granted unless it is shown that the issue is for some object compatible with public convenience and necessity; *second*, that neither public convenience nor necessity require the construction of the station, and that the stopping of trains at such a station will interfere with the proper operation of the railroads and the efficiency of their service; and *third*, that the defendants cannot afford to construct such a station.

The fact that the necessary funds will have to be raised by the issuance of securities, and that permission of the Interstate Commerce Commission will be necessary before such securities can be issued, does not constitute a defense to this action for specific performance. The Interstate Commerce Commission has no jurisdiction over the erection of stations, such jurisdiction remaining in the States, and at most the approval of the plans by the Interstate Commerce Commission may be necessary. (See *Interstate Commerce Comm.* v. *United States ex rel. Los Angeles*, 280 U. S. 52; *Atchison, T. & S. F. Ry. Co.* v. *Railroad Comm.*, 283 U. S. 380.) Certainly it is no defense to an action for specific performance of a contractual obligation to say that permission for the issuance of securities will be necessary and that such permission if applied for may be denied, in the future, by the Commission.

Nor does the allegation that the defendants cannot afford to erect the station constitute a defense. Neither poverty nor difficulty of obtaining the money has ever been recognized as a defense to an action on a contract.

Although the defendants admit that the fourth defense, when drafted, was intended only to raise the question of the necessity for obtaining permission to issue securities from the Interstate Commerce Commission, they now contend that the language of the defense is so broad that it also raises the defense that the erection of the station is contrary to public necessity and convenience.

By statute the Legislature authorized the erection of a station at or in the vicinity of One Hundred and Forty-ninth street, subject to the approval of the plans by the city. This amounted to a finding that public convenience and necessity would be served by such a station. (*City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463; *Village of Fort Edward* v. *Hudson Valley Ry. Co.*, 192 N. Y. 139.) The making of such a determination is a legislative function, and although it is generally delegated to the Public Service Commission, the Legislature always has the power to make the determination for any particular case.

The Legislature made the determination that public necessity and convenience would be served by the construction of the station, and authorized its erection, and the city cannot be forced to turn again to the Public Service Commission, which the Legislature itself created, to request it to confirm the determination of the Legislature. It is true that many years have elapsed since the statute was enacted, and conditions may have changed during that time. Nevertheless, any argument that public necessity and convenience will no longer be served by the erection of the station must be directed to the Legislature and not to the courts. (*Public Service Comm.* v. *Westchester Street R. R. Co.*, 206 N. Y. 209, 220; *Matter of Staten Island R. T. Ry. Co.*, 220 App. Div. 80; affd., 245 N. Y. 643.) At least two legislative sessions have been held since the commencement of this suit, and apparently no action has been taken by that body or the defendants.

This suit by the city is based on its contract with the defendants. There has been long delay on the part of the defendants, and perhaps the city has been overly patient. Whether unexplained delay may be evidence of waiver or acquiescence in non-performance, we do not have to decide. The defendants neither claim that they have been harmed by the delay nor do they plead waiver or abandonment. The defense merely states that

public convenience and necessity will not be served. That question, as already noted, is in the case at bar one for the Legislature and not for the courts.

The case of *Delavan* v. *Duncan* (49 N. Y. 485) does not appear to be in point. It involved the question whether specific performance should be granted to private individuals where laches and other acts on the part of the plaintiff make it inequitable to grant such relief. The pleading involved herein makes no reference to lapse of time nor laches. Moreover, it is doubtful whether mere delay is sufficient ground for denying specific performance where the plaintiff is a municipality and the object of the suit is to require the erection of a station which the Legislature has determined is required by public convenience and necessity. If the defendants were obligated to erect this station they should not be in a better position through failure to keep their agreement.

In addition it may be pointed out that evidence in support of an appeal to the discretion of a court of equity to withhold relief or to grant it upon conditions in accord with justice and equity, need not be pleaded in the answer. (*Miles* v. *Dover Furnace Iron Co.*, 125 N. Y. 294.) There is no valid reason for drawing a distinction between that case and the case at bar.

The order appealed from should be affirmed, with costs. The certified question should be answered in the negative.

O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with RIPPEY, J.; LEHMAN, J., concurs in opinion, in which CRANE, Ch. J., concurs; FINCH, J., dissents in opinion.

Orders reversed, etc.