WEBSTER'S RED SEAL PUBLICATIONS, INC., Respondent-Appellant, v GILBERTON WORLD-WIDE PUBLICATIONS, INC., et al., Appellants-Respondents.

First Department, April 12, 1979

APPEARANCES OF COUNSEL

*Sidney Schreiberg* for respondent-appellant.

*Bernard Novick* for appellants-respondents.

### OPINION OF THE COURT

SILVERMAN, J.

In this action for an accounting by plaintiff, former owner and publisher of a magazine, against defendants, the present publishers, both sides appeal from an interlocutory judgment for an accounting rendered by the Supreme Court, Trial Term, after a nonjury trial.

On April 6, 1962, plaintiff and the corporate defendants, or their predecessor, (hereinafter "defendant") entered into a letter agreement under which plaintiff assigned to defendant all plaintiff's "title, interest and right to publish" a magazine known as *Webster's Illustrated Crosswords.* In full payment therefor, defendant agreed to pay the sum of $1,000 per issue for a period of five years plus 5 cents per copy for all copies in excess of 70,000 copies sold of each issue for a period of five years. As the magazine was published bimonthly, it is apparent that in five years there would presumably be 30 issues so that the $1,000 per issue would amount to $30,000.

On May 1, 1963, a further letter agreement modified the 1962 agreement in the following respects:

1. Provided that the cover price of the magazine remained 35 cents, the payment of $1,000 per issue would be reduced to $500 per issue commencing with the June, 1963 issue; and after the sum of $30,000 shall have been paid, the price would be further reduced to $200 per issue.

2. With the same proviso, the additional payment of 5 cents per excess copy was canceled.

3. The agreement went on to provide that if the cover price was increased above 35 cents per copy, "the original terms set forth in the agreement of April 6, 1962 shall be reinstated."

4. Even after $30,000 shall have been paid, the sum of $200 per issue shall continue to be paid "as long as the book is published."

Although the price was increased above 35 cents per copy in 1970, the parties continued to operate under the 1963 agreement until approximately April, 1974.

The basic dispute between the parties relates to the effect to

be given on the facts of this case to the 1970 increase of the cover price above 35 cents. We think that on the facts of this case, by practical construction and mutual acquiescence, amounting to modification implied in fact from the conduct of the parties, the provision for change in the terms did not apply to the change in the cover price occurring in 1970, seven years after the 1963 agreement and three years after the expiration of the five-year period fixed in the 1962 agreement. Accordingly, the rights of the parties are governed by the 1963 agreement so that plaintiff is entitled to $200 per issue after the $30,000 figure had been paid (which occurred in June, 1973) and is entitled to judgment for the amount arrived at by multiplying $200 by the number of issues since then with a credit for $800 paid after the $30,000 figure had been reached.

The letter agreements are not clear as to the effect to be given to the circumstances which have arisen. We think the most persuasive evidence of the agreed intention of the parties in those circumstances is what the parties did when the circumstances arose.

The cover price remained at 35 cents per copy until 1970. From 1963 until 1965, defendant paid plaintiff the $500 per issue as required by the 1963 agreement. From 1965 to June, 1968, for 19 issues, defendant paid only $250 per issue. This was over plaintiff's objection. Beginning in August, 1968, at plaintiff's insistence, defendant again regularly made the payment of $500 per issue as called for in the 1963 agreement. In 1970, as we have said, the cover price was increased above 35 cents per copy. Neither plaintiff nor defendant went back to the 1962 agreement or suggested they should go back to it. Instead, until June, 1973, defendant went right on paying and plaintiff went right on accepting the $500 per issue in accordance with the 1963 agreement (and not $1,000 or nothing in accordance with the parties' present interpretations of the 1962 agreement). For the June, 1973 issue it only required a payment of $250 to reach the $30,000 specified in the 1963 agreement, so defendant paid $250, again quite in accordance with the 1963 agreement. Thereafter for four more issues defendant paid and plaintiff accepted $200 per issue, exactly as provided in the 1963 agreement. And during all this time plaintiff neither demanded nor did defendant pay 5 cents per excess copy (if any) in purported revival of the 1962 agreement, although the complaint alleges, upon information and

belief, that since the August, 1970 issue, more than 70,000 copies per issue have been sold.

It was not until a dispute arose as to an assignment that defendant wished to make and the discharge of Mr. Hill, the president and apparently chief and sole stockholder of the plaintiff corporation, as editor of the magazine, that defendant's new president in 1974 took the position that the 1962 agreement had been revived by the 1970 increase in the cover price.

Plaintiff takes the position that it did not know of the increase in the cover price in 1970 and that defendants "kept it secret for four years." We cannot accept this contention. We cannot understand how the cover price of a magazine published six times a year in many tens of thousand of copies can be kept secret for four years, especially as plaintiff's principal, Mr. Hill, was on the distribution list receiving each issue of the magazine and was himself employed as editor of the magazine.

"Unexplained delay is evidence of waiver and acquiescence in non-performance." *(City of New York v New York Cent. R. R. Co.,* 275 NY 287, 293.)

We therefore conclude that as a matter of practical construction—or what, as a practical matter, amounts to the same thing, modification of the agreement implied in fact from the course of the conduct of the parties—the proviso about the increase in cover price was no longer effective by 1970, and that after the $30,000 had been paid, plaintiff was and is entitled to $200 per issue only.

Our interpretation also makes considerable business sense. The 1962 agreement provided for a complete transfer of "all of the title, interest and right to publish the magazine" from plaintiff to defendant. It provided for a consideration geared to events in the ensuing five years. Plaintiff was to receive $1,000 per issue for that five years; presumably the parties expected 30 issues, thus making payment of $30,000 in the five years; but defendant had the right to publish only 20 issues in that time, in which event, the amount would be $20,000. (If less than four issues a year were published, the rights would revert to plaintiff.) The 1962 agreement further provided for payments of 5 cents per copy per issue in excess of 70,000 copies during this five-year period. At the end of the five-year period, plaintiff would be entitled to nothing. The transaction would to all intents and purposes be completely executed with

defendant having all rights and plaintiff essentially out of the picture.

Apparently this arrangement was not working out satisfactorily, so the parties entered into the 1963 modification under which the $1,000 payments per issue were reduced to $500 per issue, but were to continue until $30,000 had been paid and not limited by the five-year provision. And even after the $30,000 had been paid, plaintiff would continue to receive as long as the magazine was published $200 per issue. Thus plaintiff now had a relatively permanent continuing interest in the enterprise. But by that agreement also, the provision for the 5 cents per excess copy was dropped.

It is a familiar principle of law that where no time is fixed in a contract, the law may imply a reasonable time. (Cf. *City of New York v New York Cent. R. R. Co.,* 275 NY 287, 292, *supra.)* Applying that principle here, we think the proviso for return to the 1962 agreement on increase of the cover price above 35 cents per copy was to apply for a reasonable time in all the circumstances. But after the agreement had been operating for some years, the 1963 agreement became the permanent pattern. Certainly some years after the five years had expired, it would be extremely difficult to return to an arrangement under which plaintiff's rights were geared and essentially limited to the number of issues and number of copies during five years which had long expired.

In any event, the actions of the parties when the cover price was raised indicate an abandonment, or a recognition of the practical expiration, of the increase in the cover price proviso, by mutual agreement of the parties.

The agreements and the situation are ambiguous. We think the interpretation we have adopted is the most reasonable one. Alternative interpretations are of course possible. But all the alternative interpretations that have been suggested suffer from the major obstacle that they do not take adequate account in our view of the actions of the parties and the practical construction, or implied in fact modification, that those actions indicate. And as these alternative interpretations are thus based largely on the old letters without regard to the conduct of the parties, they are subject to certain additional objections precisely because the letters are so ambiguous and, as to the increase in cover price proviso, probably inapplicable to the present situation.

Thus, the dissent would give the plaintiff not only what we

have held plaintiff is entitled to under the 1963 agreement, i.e., $200 per issue after the $30,000 was reached, but also 5 cents per copy in excess of 70,000 copies from the time of the change in cover price in 1970. In addition to the objection of practical construction to which we have alluded, this interpretation is inconsistent with the provision in the 1962 agreement on which the 5 cents per copy must be based, that this applied only to copies issued in the years 1962 to 1967, and thus limited to a total period of five years. The result of the dissent's suggestion is that plaintiff would get $30,000 plus $200 per issue thereafter, plus 5 cents per excess copy. Neither the 1962 nor the 1963 agreement contemplated plaintiff's getting all three of these and we do not think the combination of the two agreements did. We think that it was never intended that plaintiff should get both the $200 and the 5 cents per excess copy; they were intended in substitution for each other, not in addition.

The trial court's interpretation was substantially what the dissent has adopted, except that the trial court made the $200 per issue retroactive to 1970. This raises the problem whether that $200 was to be in addition to the $500 per issue paid between 1970 and 1973; if so, we are all agreed that this was error as plaintiff was receiving $500 per issue until 1973 and on no view of the evidence was plaintiff to get the additional $200 per issue until after it had received $30,000 by the $500 per issue payments.

Plaintiff's interpretation is that plaintiff is entitled to $1,000 per issue indefinitely from 1970 on plus the 5 cents per excess copy from 1970 on. In addition to the other objections we have mentioned, this ignores the five-year limitation with respect to the $1,000 per issue and 5 cents per excess copy payments and ignores the practical limitation of the 1962 agreement and the express limitation of the 1963 agreement to a total of $30,000 for the $1,000 or $500 per issue payments.

Defendant's suggestion is that the parties are relegated to the 1962 agreement and that plaintiff having receiving $30,-000 (which is what $1,000 per issue for five years would amount to), the $200 per issue payments thereafter made should be refunded or credited and plaintiff is entitled only to 5 cents per copy in excess of 70,000 copies for the period 1962 to 1967. (We assume that this would end up as a figure favorable to defendant.) In addition to ignoring the conduct of the parties giving rise to the practical construction to which

we have referred, defendant's suggestion seems to us to be quite inconsistent with any reasonable intention of the parties. The parties cannot have intended that a "royalty" of 5 cents per excess copy not paid or owed during the period that these copies were published, 1962 to 1967, should be retroactively imposed because of events in 1970.

The trial court's decision indicated that the complaint should be dismissed as against the individual defendants, and we are all agreed that that is correct. Apparently by oversight, the formal judgment did not contain that provision and the judgment should also be modified accordingly.

The judgment of the Supreme Court, New York County (SUTTON, J.), entered February 9, 1978, directing that plaintiff is entitled to an accounting on a per copy basis as well as a royalty of $200 per issue for each of the magazines involved since 1970, should be modified, on the law and the facts, so as (a) to dismiss the complaint as against the individual defendants William E. Kanter and Penelope Kanter; (b) to strike the provision of the judgment for an accounting and for a payment to plaintiff of a royalty of 5 cents per copy; (c) to provide that plaintiff is entitled to a payment from defendant corporations of $200 per issue of the magazine published after June, 1973 rather than from 1970, as provided in the judgment with interest; and (d) the matter should be remanded to the Supreme Court, New York County, for assessment of the amount owed by the corporate defendants to plaintiff pursuant to (c) above (unless the parties can agree what that amount equals on the basis specified in [c] above, in which event, the amount may be stated in the order to be settled hereon); findings of fact inconsistent herewith are reversed and new findings made as indicated in the opinion; and the judgment should otherwise be affirmed, without costs on appeal, but costs of reproduction of the record should be borne one half by the plaintiff and one half by the defendant corporations.

FEIN, J. (dissenting in part). I agree with the majority in concluding that plaintiff is entitled under the May 1, 1963 letter-agreement to payment of $200 per issue for publications after June, 1973, when defendants discontinued payments to plaintiff. I am also in agreement that the judgment should be modified so as to dismiss the complaint as against the individual defendants, William E. Kanter and Penelope Kanter. However, I construe the agreements under the facts presented

as entitling plaintiff to an accounting to recover 5 cents per copy for every copy in excess of 70,000 copies sold each month from the time defendants changed the cover price in 1970 to a price above 35 cents.

I concur with the majority that the two agreements are poorly drawn and ambiguous and hence there is a need to resort to extrinsic evidence to the extent necessary to construe the agreements properly so as to give effect to the intention of the parties. However, I disagree with the majority which gives effect only to the May 1, 1963 modification agreement and disregards entirely the prior April 6, 1962 agreement. Rather, a more practical construction, in my judgment, would require giving effect to both agreements to the extent possible, by construing them together in order to determine the respective rights and obligations of the parties.

Implicit in the majority's "practical construction" of the intention of the parties is that the later agreement terminated the earlier agreement, and that the 1962 agreement, which by its terms was to remain in effect for only five years, ended after that period of time. However, the actions of the parties acknowledge that the original licensing arrangement, although initially for a five-year term, was to extend beyond that initial period.

Moreover, the majority's conclusion that plaintiff is only entitled to $200 per issue pursuant to paragraph 4 of the May 1, 1963 modification, the first $30,000 having been paid, completely ignores the testimony relating to defendant's letter to plaintiff, dated March 7, 1963, proposing modification of the April 6, 1962 agreement. That proposal would have accomplished the result which the majority now holds the parties agreed upon in the May 1, 1963 modification. However, the testimony of Mr. Hill on behalf of the plaintiff and Mr. Kanter on behalf of the defendant is plainly to the effect that plaintiff refused to agree to the March 7, 1963 proposed modification. I am at a loss to see how any "practical construction" can find an agreement between the parties on the one thing they say they did not agree to. The May 1, 1963 modification was drawn and agreed to in order to overcome the plaintiff's objection to defendant's proposed limitation of $200 per issue after the $30,000 had been paid. This is the significance of paragraphs 2 and 3 of the May 1, 1963 modification which read as follows:

"(Par. 2): Further providing that the cover price remains

35¢ the additional payment of 5¢ per copy for all copies in excess of 70,000 copies sold as set forth in said Paragraph 2 is cancelled.

"(Par. 3): If, however, the cover price of Webster's Illustrated Crosswords is increased from 35¢ the original terms set forth in the agreement of April 6, 1962 shall be reinstated."

On the face of the modification agreement and in the light of the testimony, the meaning of these sentences can only be that the provision of the April 6, 1962 agreement for payment of 5 cents per copy for all copies in excess of 70,000 copies was not to apply as long as the cover price remained 35 cents, but that the obligation to pay was to be reinstated if the cover price increased above 35 cents.

The record is clear that in 1970 the cover price was increased above 35 cents per copy. The majority holds that because the plaintiff failed to take any steps to obtain payment for the excess copies it waived or consented to the surrender of any rights to such payments. Although it may be difficult to believe that the plaintiff did not know of the price increase, there is no evidence that it knew or was ever furnished with an accounting as to the number of copies sold after the price increase. The suggestion that there was mutual acquiescence also overlooks the fact that it was not until March 26, 1974 that the defendant in writing took the position that its unilateral increase of the price above 35 cents reinstated the original agreement of April 6, 1962 *in toto*. It is plain that plaintiff never agreed to this. Moreover, both parties concurred in their testimony that the conclusion which the majority now reaches was not the agreement of the parties. In the face of the testimony and the agreements it is difficult to accept the notion that plaintiff agreed that defendant could terminate plaintiff's right to the additional payment of 5 cents per copy by unilaterally increasing the price per copy.

Had the parties intended to relate the "additional" 5 cents per excess copy payment to the schedule of payments per issue under paragraph 1 of the 1963 agreement, they could have easily done so. Moreover, although the $1,000 and $500 per issue payments, provided for under paragraph 1 of the 1963 agreement, were only to be made until the sum of $30,000 had been paid, thereafter to be reduced to $200 per issue (pars 1 and 4 of the May 1, 1963 agreement), the 5 cents per excess copy provision is not similarly limited. There is no

express provision terminating the 5 cents per excess copy payments required under paragraph 2, upon payment of the sum of $30,000 under paragraph 1. The only restriction which appears to have been imposed is to cancel such 5 cents per excess copy payment as long as the cover price of the magazine remained at 35 cents.

Accordingly, the judgment, Supreme Court, New York County (SUTTON, J.), entered February 9, 1978, should be modified to the extent of directing that defendants pay to plaintiff $200 per issue for publications after June, 1973, rather than 1970 as provided for in the judgment, dismissing the complaint as against the individual defendants, William E. Kanter and Penelope Kanter, and otherwise affirmed.

BIRNS, J. P., and SULLIVAN, J., concur with SILVERMAN, J.; FEIN, J., dissents, in part, in an opinion.

Judgment, Supreme Court, New York County, entered February 9, 1978, modified, on the law and the facts, so as (a) to dismiss the complaint as against the individual defendants William E. Kanter and Penelope Kanter; (b) to strike the provision of the judgment for an accounting and for a payment to plaintiff of a royalty of 5 cents per copy; (c) to provide that plaintiff is entitled to a payment from defendant corporations of $200 per issue of the magazine published after June, 1973 rather than from 1970, as provided in the judgment with interest; and (d) the matter remanded to the Supreme Court, New York County, for assessment of the amount owed by the corporate defendants to plaintiff pursuant to (c) above (unless the parties can agree what that amount equals on the basis specified in [c] above, in which event, the amount may be stated in the order to be settled hereon); findings of fact inconsistent herewith are reversed and new findings made as indicated in the opinion; and the judgment otherwise affirmed, without costs and without disbursements on appeal, but costs of reproduction of the record are to be borne one half by the plaintiff and one half by the defendant corporations.

Settle order.