ANTHONY SCHORR, Doing Business as SCHORR AUTOMOTIVE, Appellant, v BANK OF NEW YORK (COUNTY TRUST REGION), Respondent.

Second Department, January 17, 1983

APPEARANCES OF COUNSEL

*Stephens & Buderwitz (James R. Caruso* of counsel), for appellant.

*Richard C. Thompson (Harold J. Johnson* of counsel), for respondent.

OPINION OF THE COURT

NIEHOFF, J.

This case, which is here by leave of this court, originated in the City Court of the City of White Plains. In his opinion, the City Court Judge wrote that the case, which

concerns itself with the sum of $761.25, "involves a question of law which goes to the heart of the credit card operation and appears to be one of first impression in this State" (107 Misc 2d 132). It was because of the importance of the question presented that this court determined to grant leave.

There is no dispute as to the facts. The plaintiff, who owns and operates a transmission repair shop, performed certain work on a customer's car. The customer paid for the work by use of his credit card and the car was released to him by the repair shop.

On February 8, 1980 the plaintiff deposited the credit card sales slip, signed by the customer in the amount of $761.25, into a checking account which he maintained with the defendant, the Bank of New York. Thereafter, on March 29, 1980, the customer executed a form entitled "CARDHOLDER DISPUTE" provided by Marine Midland Bank, at which he maintained his Master Charge account. On that form the customer stated that he had paid the plaintiff for certain automotive repair work using his Master Charge card, that the car was never repaired, that he was disputing the entire charge, and that such charge came to $765. Eventually, through banking procedures, the customer's action came to the defendant bank's attention. As a consequence, on April 15, 1980, the defendant debited plaintiff's account in the sum of $761.25. The bank's action was taken pursuant to a written agreement which it had with the plaintiff entitled "CHARGE PLAN MERCHANT AGREEMENT". Insofar as pertinent, paragraph 10 of the agreement reads as follows: "On demand Merchant [plaintiff] will pay to BNY [defendant Bank of New York] the amount paid or credited for, and will indemnify BNY against all liability, loss claims and demands whatsoever arising in connection with 'Unqualified Sales Slips', i.e., Sales Slips and the transactions evidenced thereby * * * in connection with which * * * there is any dispute or defense (whether or not valid) between Merchant and Cardholder * * * BNY may charge any Unqualified Sales Slip back to the Merchant and offset the amount of any Unqualified Sales Slip against the net proceeds due to Merchant from other Sales

Slips deposited with BNY and BNY is authorized to debit Merchant's account for the amount thereof."

Insofar as pertinent paragraph 13 of the agreement states: "Merchant waives notice of default or nonpayment, protest or notice of protest, demand for payment and any other demand or notice in connection with any Credit Sale, Sales Slips, Credit Memo or this Agreement".

In the present action by the plaintiff repair shop owner to recover the $761.25 debited against his account, it is not disputed that the aforesaid agreement with the bank permitted it to make the charge-back. However the plaintiff's argument before the City Court was that the agreement was invalid and unenforceable and he continues to press that contention on this appeal.

By a decision dated November 14, 1980 the City Court granted the plaintiff's motion for summary judgment stating, in part (107 Misc 2d 132, 134, *supra*):

"The issue * * * narrows down to the validity of the agreement between plaintiff and defendant. There is no doubt that the agreement itself permitted the defendant to make the deduction which it did. The agreement before the court contained no time limit at all within which the bank will honor a cardholder dispute claim, even from a cardholder whose card was issued by another bank. This is not merely a case of a depositor waiving certain notices and demands but results in the depositor having no security or finality in his account for an infinite period of time.

"The court, therefore, holds that the agreement is unreasonable and unenforceable and grants the plaintiff's motion for summary judgment."

On July 9, 1981 the Appellate Term for the Ninth and Tenth Judicial Districts unanimously reversed the order and judgment (one paper) entered upon the foregoing decision (112 Misc 2d 684-685), stating in relevant part: "The charge card agreement between plaintiff merchant and defendant bank provided that in the event of a dispute between the merchant and a customer who paid by credit card, the bank could debit the merchant's account for the amount involved. Given Federal regulations permitting a card holder to withhold payment to the card issuing bank

for the amount in controversy to the extent of the credit extended (see 12 CFR 226.13) this part of the agreement cannot be deemed unconscionable. Nor does the lack of a time limit for taking such action nullify the agreement, since a reasonable time will be implied (see *City of New York v New York Cent. R.R. Co.,* 275 NY 287). The defendant debited plaintiff's account less than three weeks after the date of the form in which the customer notified the issuing bank of the existence of the controversy. This time period should not be deemed unreasonable. Since no issue of fact exists and since, even on appeal, summary judgment may be awarded the nonmoving party, judgment should be entered in favor of defendant (see *Wiseman v Knaus,* 24 AD2d 869; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3212:23, p 443)."

We affirm the order of the Appellate Term.

In arguing for a reversal of the order of the Appellate Term, the plaintiff contends that the mere notification by Marine Midland Bank, that one of its credit card customers had disputed a charge transaction, furnished no basis for the unilateral action on the part of the defendant depository bank to charge back the deposit credited to his checking account almost two months earlier, and that an effective investigation of the matter should have been made by the defendant depository bank before taking that action.

The difficulty with such argument is that it is obvious that the agreement between the plaintiff, as depositor, and defendant, as the depository bank, was designed to absolve the latter from any responsibility for investigating or determining the validity of a customer's complaint. Since both the card issuing bank and the depository bank are merely acting as financial intermediaries between the primary parties to the transaction, the cardholder and the merchant, the banks involved have no way of knowing the legal rights as between the parties. Therefore, it is not at all surprising that the depository bank should procure an agreement from the merchant allowing that bank to step away from the situation and permit the real parties to the controversy, the merchant and the customer, to battle it out themselves. In short, it is the defendant bank's position

that this is not its war and that it should not be faulted for refusing to fight in it.

The agreement between the plaintiff and the defendant, pursuant to which the charge-back was made, is a mutually beneficial one, employed by the defendant, as a depository bank, to govern credit card transaction rights and liabilities between itself and merchants accepting Master Charge cards in payment for goods and services. In essence, a depository bank agrees for a certain fee to process credit card transactions between an individual merchant and the network of other financial institutions which both issue credit cards to their customers and represent other merchants who accept credit cards in payment for their goods and services. The merchant profits from the agreement by increased sales volume due to his acceptance of a form of payment from his customer other than cash. The merchant also receives immediate credit to his account for credit card sales, even before they are sent through the interbank processing system. However, inasmuch as the credit cardholder has the right under Federal law to refuse payment to the issuing bank (see Truth in Lending Act, US Code, tit 15, § 1666i; and regulation "Z" thereunder, 12 CFR former 226.13 [d] [1]), the depository bank, which is one step removed from the actual transaction giving rise to the credit card debit or credit, obtains from the merchant an agreement to the effect that all charge-backs, or disputed amounts, for which the depository bank is not paid, may be deducted from the merchant's account. By this means, the risk that a credit card customer may dispute the transaction and refuse to pay is borne by the party who actually accepted payment by credit card. Indeed, the risk is not unlike that taken by a merchant who accepts a check which is later dishonored.

It is true, as plaintiff asserts, that in debiting his account for the sum of $761.25, the defendant acted "unilaterally". But, the bilateral written agreement of the parties authorized that very action by the defendant and we are unable to perceive anything wrongful in the conduct of the defendant, which simply exercised the rights given to it under the agreement.

Plaintiff also complains of the fact that he accepted the customer's credit card charge in full payment for his services, relying upon the expectation of payment from the defendant, that he thereby surrendered his "possessory lien", which by law was his guarantee of payment, and that at this late date he cannot regain that security. That may well be, but that is a risk the merchant assumes when he determines to engage in credit card transactions.

Manifestly, the plaintiff's remedy in this dispute is an action against the customer whose credit card payment he accepted, and not against the defendant bank which merely processed the credit card sales slip. The fact that some credit charges are not collected because of a dispute between the customer and the merchant, and are eventually charged back to the merchant's account by the bank, is a normal contingency of many commercial sales transactions in which methods of payment other than cash are accepted. Certainly, neither the card issuing bank nor the depository bank should suffer any loss as the result of a dispute between the merchant and the customer.

Accordingly, we hold that so much of the agreement as authorizes the charge-back cannot be characterized as unconscionable.

Although it is true that the agreement places no time limitation on the defendant bank's right to debit the plaintiff merchant's account, it does not follow that the agreement is thereby rendered invalid. The absence of a time limitation is due to the fact that the Federal statutes and regulations contain no time limitation within which the customer is required to dispute the charge and the bank has no way of knowing when the customer will exercise his or her right to claim that the merchant's goods or services were defective. However, it is reasonable to presume that the consumer will assert his right to withhold payment to the card issuing bank when he receives his bill containing the charge in question. This, of course, will, in turn, depend on when the merchant deposits the charge slip. That step is likely to be taken quite promptly after the credit card transaction occurs. Thus, it would seem that the dispute, the raising of the defense of defective goods or services, and

the ultimate charging back to the merchant can be expected to occur within reasonable time limits.

In the case at bar, the bank debited the plaintiff's account less than three weeks after the date that the customer signed the form notifying the issuing bank of the existence of a controversy. As the Appellate Term said (p 685), "[t]his time period should not be deemed unreasonable."

For the reasons stated above, we hold that the provision of paragraph 10 of the agreement authorizing the defendant to debit plaintiff's account in the circumstances at bar is valid and that summary judgment was properly granted in favor of the defendant bank. Accordingly, the order of the Appellate Term should be affirmed.

O'CONNOR, J. P., BRACKEN and BOYERS, JJ., concur.

Upon appeal by permission, order of the Appellate Term of the Supreme Court, Ninth and Tenth Judicial Districts, dated July 9, 1981, affirmed, with $50 costs and disbursements.