[906 NYS2d 535]

Brad H. et al., Respondents, v City of New York et al., Appellants.

First Department, August 10, 2010

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Jeffrey S. Dantowitz, Edward F.X. Hart* and *Drake A. Colley* of counsel), for appellants.

*Debevoise & Plimpton, LLP*, New York City (*Emily O'Neill Slater, Christopher K. Tahbaz, Julie M. Calderon* and *Matthew Hackell* of counsel), *New York Lawyers for the Public Interest, Inc.*, New York City (*Roberta Mueller* of counsel), and *Urban Justice Center*, New York City (*Jennifer J. Parish* and *Douglas Lasdon* of counsel), for respondents.

## OPINION OF THE COURT

Saxe, J.

In August 1999, the named plaintiffs commenced this action on behalf of themselves and other similarly situated mentally ill inmates in New York City jails, seeking injunctive and declaratory relief requiring the City to provide adequate discharge planning services for all members of the class, pursuant to the New York State Constitution, Mental Hygiene Law § 29.15 and 14 NYCRR 587.1 *et seq*. The parties entered into a settlement agreement on January 8, 2003, pursuant to which the City agreed to provide discharge planning services to all members of the class certified by the court. The agreement specified that the court would have continuing jurisdiction over the action only "for the term of this Agreement" and that "[t]he provisions of this Agreement shall terminate at the end of five years after monitoring by the Compliance Monitors begins pursuant to § IV of this Agreement."

On May 22, 2009, plaintiffs moved by order to show cause for injunctive relief, seeking an order compelling compliance by defendants with the settlement agreement; defendants cross-moved for an order declaring that the action is terminated and that the court no longer has jurisdiction over the dispute, in that the five-year period contemplated by the agreement came to an end before the motion was brought.

Therefore, this appeal requires determination of a single issue: the point in time at which monitoring by the compliance monitors may be said to have begun, in order to determine the point at which the court's jurisdiction came to an end.

As provided in the agreement, each side would designate one compliance monitor, and both sides would then jointly move for an order appointing the two monitors "so that they can begin the performance of their duties pursuant to this Settlement

Agreement no later than the Implementation Date." The settlement defined the plan's "Implementation Date," by which the City was to have in place all aspects of the settlement, including adoption of all manuals and other documents required to implement the settlement, as 60 days after final entry of the order and judgment. Since the final judgment was entered on April 4, 2003, the Implementation Date was June 3, 2003.

The order appointing the proposed monitors was issued on May 6, 2003. According to their first report, dated September 3, 2003, the monitors "began to engage in some limited reviews of draft policies and procedures" on May 19, 2003, met with the City's attorney to discuss the City's draft policies on May 22, 2003, and observed a training session on May 28, 2003. However, their report expressed their view that "monitoring activities did not commence in earnest until June 25, 2003," and that even as of the report date, the monitors were disinclined to offer an opinion whether there had been "substantial compliance or lack thereof" by the City in implementing the terms of the settlement.

Plaintiffs contend that the monitoring began on June 25, 2003, the date on which the monitors said that monitoring activities began "in earnest." Adding five years plus 356 agreed-upon days of tolling pursuant to the parties' stipulations, plaintiffs conclude that the "sunset" date for the settlement was June 15, 2009, and therefore that the court still had jurisdiction to enforce the settlement when the motion was brought on May 22, 2009.

Defendants contend that monitoring began on May 6, 2003, the date on which the monitors were appointed and were provided with the required access to people, places, and things relevant to the discharge planning contemplated by the settlement. Adding five years plus 356 days to that date would make the "sunset" date April 26, 2009, which would require denial of the enforcement motion and dismissal of the action.

For its part, the motion court concluded that the settlement's sunset provision should be calculated from the plan's "Implementation Date," that is, June 3, 2003, 60 days after entry of the final order and judgment in this action. The court remarked that while "some action" by the monitors occurred in the drafting, hiring and preparing for implementation of the discharge plan, "there could be no monitoring of substantive [*sic*] compliance" preceding the Implementation Date (2009 NY Slip Op 31561[U], *5). It noted that the settlement did not require the

City to be in substantial compliance with the settlement terms before that date, and that the City itself, in paying the monitors and negotiating the toll periods, had relied upon the Implementation Date as a point of reference in determining the parties' rights and obligations under the settlement's discharge plan. The court therefore granted plaintiffs' motion for a preliminary injunction requiring the City to continue to abide by the terms of the settlement, and denied the City's cross motion for an order declaring the action to be terminated.

We begin by observing that while monitoring could not have begun before May 6, 2003, it does not follow that monitoring in fact began that early, as defendants suggest. Indeed, the settlement does not say that it will terminate five years after the date on which the monitors were appointed, or on the date on which defendants were *subject to* monitoring. It refers to the date on which monitoring *actually begins.*

We also reject the conclusion of the motion court that the settlement's sunset provision should be calculated from the plan's "Implementation Date," that is, June 3, 2003, 60 days after entry of the final order and judgment in this action. The Implementation Date was merely an outside date by which the monitors were required to have begun the performance of their duties. While, as the court noted, the City relied upon the Implementation Date as a point of reference in paying the monitors and negotiating the toll periods, an attorney's personal view as to when monitoring began is not controlling; this Court must determine for itself on what date monitoring must be said to have commenced for purposes of the settlement agreement.

Nor do we accept plaintiffs' proposal that because the monitors themselves, in their first report, dated September 3, 2003, asserted that "monitoring activities did not commence in earnest until June 25, 2003," we should consider June 25, 2003 as the date on which that monitoring began. The monitors' assessment of when monitoring began "in earnest" is not relevant, since the phrase "in earnest" creates an element not contained in the settlement itself, which merely refers to when monitoring "begins."

To arrive at our own assessment of when the monitoring actually began, we examine the agreement itself. We keep in mind that the task the monitors were charged with monitoring was the contemplated discharge planning for the defined class of inmates, and that "discharge planning" was defined as "the process of formulating and implementing the Discharge Plan."

The section of the settlement that describes the "Scope and Method of Monitoring" provides:

> "The principal means of monitoring shall be access to documents and records, including those stored electronically; access to Class Members; and observation of training sessions; provided, however, the Compliance Monitors shall also have access to facilities and staff described below as the Compliance Monitors deem reasonably necessary to determine whether Defendants are complying with the terms of this Settlement Agreement."

In the absence of any provision specifying which of the monitors' duties constitute "monitoring," we conclude that any affirmative act on the part of the monitors in furtherance of carrying out the described tasks would suffice. There is no basis to conclude that such tasks must be "significant," "earnest" or "non-limited" in nature or scope to qualify as beginning the process.

According to their report, the monitors "began to engage in some limited reviews of draft policies and procedures" on May 19, 2003. In our view, such reviews of draft procedures must qualify as beginning the process of monitoring the formulation of a discharge plan. Even if that were not so, both the monitors' meeting with the City's attorney to discuss the City's draft policies on May 22, 2003 and their observation of a training session on May 28, 2003 would qualify as monitoring, since they were tasks required for overseeing the formulation of discharge plans.

If monitoring began on May 19, 2003, then the "sunset date" on which the settlement terminated was May 10, 2009; if it began on May 28, 2003, the termination date was May 19, 2009. No matter which of the three events cited above is considered the commencement of monitoring, however, the agreement by its terms terminated before the date on which plaintiffs moved for injunctive relief against the City, May 22, 2009. Because the settlement was already terminated by that time, the court was left without jurisdiction to rule on the application.

Finally, plaintiffs' estoppel argument is without merit. Estoppel is generally unavailable against a governmental agency (*see Matter of New York State Med. Transporters Assn. v Perales*, 77 NY2d 126, 130 [1990]), except in rare instances where the government's actions "would operate to defeat a right legally and rightfully obtained," not where the actions would operate "to create a right" (*Matter of McLaughlin v Berle*, 71 AD2d 707, 708 [1979], *affd* 51 NY2d 917 [1980]).

We do not rule on the dissent's proposal that in the alternative we should allow the reformation of the tolling agreements on the basis of mutual mistake, because no request was made for such relief.

Accordingly, the order of the Supreme Court, New York County (Marilyn Shafer, J.), entered July 16, 2009, which granted plaintiffs' motion for a preliminary injunction requiring defendants to continue to abide by the terms of the parties' stipulation of settlement entered into on January 8, 2003 and approved in an amended final order and judgment dated April 2, 2003, and denied defendants' cross motion for an order declaring the action terminated pursuant to the terms of the stipulation, should be reversed, on the facts, defendants' cross motion granted, and the action declared terminated in the absence of jurisdiction over the dispute.

Tom, J.P. (dissenting). I see no reason to engage in speculation with respect to when monitoring of the City's discharge planning services commenced under the terms of the parties' stipulated settlement of January 8, 2003.

The interpretation of an agreement is governed by straightforward rules. The best indication of what the parties intended by their agreement is to be found in its language (*see Slamow v Del Col*, 79 NY2d 1016, 1018 [1992]). The objective of a court "in searching for the probable intent of the parties . . . is a practical interpretation of the expressions of the parties to the end that there be a realization of [their] reasonable expectations" (*Sutton v East Riv. Sav. Bank*, 55 NY2d 550, 555 [1982] [internal quotation marks and citations omitted]; *see also Reape v New York News*, 122 AD2d 29, 30 [1986], *lv denied* 68 NY2d 610 [1986] ["the intent of the parties in entering an agreement is a paramount consideration when construing a contract"]; *Greenwich Vil. Assoc. v Salle*, 110 AD2d 111, 114 [1985] ["In construing the terms of a contract, the judicial function is to give effect to the parties' intentions"]).

Where, as here, the terms of an agreement are susceptible to alternative constructions, the interpretation to be applied is the meaning ascribed to such terms by the parties. As the United States Supreme Court observed, "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence" (*Old Colony Trust Co. v Omaha*, 230 US 100, 118 [1913]). This Court has applied the principle to circumstances not contem-

plated by a contract, stating that "the most persuasive evidence of the agreed intention of the parties in those circumstances is what the parties did when the circumstances arose" (*Webster's Red Seal Publs. v Gilberton World-Wide Publs.*, 67 AD2d 339, 341 [1979], *affd* 53 NY2d 643 [1981]). In *Federal Ins. Co. v Americas Ins. Co.* (258 AD2d 39, 44 [1999]), we noted that "the parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties' " (quoting *Webster's Red Seal Publs.*, 67 AD2d at 341). We adhere to the principle (*see e.g. Waverly Corp. v City of New York*, 48 AD3d 261, 265 ["The best evidence of the intent of parties to a contract is their conduct after the contract is formed"]), as do other Departments (*see e.g. T.L.C. W., LLC v Fashion Outlets of Niagara, LLC*, 60 AD3d 1422, 1424 [2009]) and the federal courts (*see e.g. Croce v Kurnit*, 737 F2d 229, 235 [2d Cir 1984]).

Under the parties' stipulated settlement agreement, Supreme Court's jurisdiction over the City's performance of its obligations is coextensive with the agreement's duration, which concludes five years after compliance monitoring began, a date specified to be "no later than the Implementation Date." In negotiating the first of a series of stipulations tolling the expiration of the settlement agreement in July 2007, the parties disagreed about the precise expiration date, but only as to whether it was June 2, 2008, as computed by defendants, or June 25, 2008, as determined by plaintiffs. At plaintiffs' suggestion, the term "sunset date" was employed in the tolling agreements rather than a specific date; however, it is clear that during the several years preceeding the commencement of this proceeding, neither party considered the expiration date to have been before June 2, 2008. The parties having agreed to toll the expiration of the settlement agreement in reliance on an expiration date between June 2 and June 25, 2008, the courts are obligated to interpret the agreement in accordance with the parties' performance under it. Given an expiration date of June 2, 2008, the settlement agreement remained in effect when plaintiffs' motion was filed, and Supreme Court retained jurisdiction to issue the preliminary injunction at issue.

Accordingly, the order should be affirmed. Alternatively, plaintiffs are entitled to reformation of the tolling agreements on the basis of mutual mistake as to the expiration date of the settlement agreement, and their filing of the motion for injunctive relief should be deemed timely.

ANDRIAS and McGUIRE, JJ., concur with SAXE, J.; TOM, J.P., and MANZANET-DANIELS, J., dissent in a separate opinion by TOM, J.P.

Order, Supreme Court, New York County, entered July 16, 2009, reversed, on the facts, defendants' cross motion granted, and the action declared terminated in the absence of jurisdiction over the dispute.