FEDERATED MUTUAL INSURANCE COMPANY, as Subrogee of American Hardwall Supply Company of Rome, Inc., d/b/a True Value Hardware, Plaintiff,

v.

WOODSTOCK '99, LLC, Defendant.

Woodstock '99, LLC, Third-party Plaintiff,

v.

Ace Hardware Corporation, Third-party Defendant.

No. 5:00–CV–385.

United States District Court, N.D. New York.

April 23, 2001.

Law Offices of Mark D. Goris (Mark D. Goris, of counsel), Cazenovia, NY, for Plaintiff Federated Mutual Insurance Company.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP (Cynthia Holfester, of counsel), New York City, for Defendant Woodstock '99, LLC.

Ahmuty, Demers & McManus (William G. Kelly, of counsel), White Plains, NY, for Third-party Defendant Ace Hardware Corporation.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On March 6, 2000, plaintiff Federated Mutual Insurance Co. ("Federated") commenced the instant action as subrogee of American Hardwall Supply Company of Rome ("American") against defendant Woodstock '99, LLC ("Woodstock") to recover payments in excess of $600,000 made to its insured, American. Woodstock answered the complaint, and also filed a third-party action against third-party defendant Ace Hardware Corporation ("Ace").[1]

Federated now moves for partial summary judgment to dismiss Woodstock's Thirteenth Affirmative Defense (waiver of subrogation) pursuant to Federal Rule of Civil Procedure 56.[2] Defendants oppose. Oral argument was heard on April 13, 2001, in Utica, New York. Decision was reserved.

## II. FACTS

Woodstock operated the Woodstock '99 festival in Rome, New York during the summer of 1999 (the "festival"). This action arises out of property damage sustained by American at the festival. It is based upon the alleged negligence of Woodstock in failing to maintain security and crowd control. Because of the limited nature of the relief sought on the instant motion, only the facts pertinent to this motion will be stated herein.

Ace contracted with Woodstock to become a sponsor for the festival (the "Woodstock agreement"). Pursuant to the Woodstock agreement, Ace had the right to designate a supplier of camping supply products for the festival. By letter agreement dated July 16, 1999 (the "American letter agreement"), Ace designated American as the exclusive supplier of camping supply products at the festival. The American letter agreement required American to indemnify Ace and Woodstock

---

**1.** Woodstock and Ace are referred to collectively in this decision as "Defendants."

**2.** Plaintiff also moved to dismiss Woodstock's Eleventh Affirmative Defense (based on the principle of anti-subrogation). At oral argument, the parties stipulated to the dismissal of this affirmative defense.

(as well as certain other parties), and to obtain suitable insurance. Plaintiff was the insurer of American for purposes of the festival.

Pursuant to the Woodstock agreement, Ace was obligated to indemnify Woodstock for actions arising from the negligence of Ace, and to name Woodstock as an additional insured on Ace's insurance policy for the festival. Ace was also required to waive subrogation as against Woodstock. The Woodstock agreement also required the suppliers designated by Ace to waive subrogation against Woodstock.[3]

The American letter agreement contained no waiver of subrogation; however, it did contain the following statement:

As you know, Ace Hardware Corporation ("ACE") and Woodstock '99, LLC ("Woodstock '99") entered into a letter agreement dated June 1, 1999. Woodstock '99 has subsequently prepared a

---

**3.** Exhibit A to the Woodstock agreement provided that "[Ace] and/or [Ace's] Retailer shall obtain insurance coverage, and shall provide evidence of such insurance as follows. All insurance shall waive subrogation against any of the Indemnities and shall name the Indemnities as additional insureds ...." Exhibit A then set forth requirements for property insurance, commercial general liability insurance, and worker's compensation insurance. It is undisputed that the insurance obtained by American and produced for Ace's approval neither waived subrogation nor named Woodstock as an additional insured.

**4.** The remainder of the American letter agreement is set forth below:
   The Agreement requires Ace to indemnify, defend and hold harmless Woodstock '99 and various government entities from all costs, damages, settlements, etc., by reason of the acts and/or omissions of Ace as sponsor, its invitees and "Third Parties" as defined in the Agreement. Because American Hardwall Supply Co. will be operating the store on the festival grounds, we need its written agreement to undertake responsibility for any of its acts or omissions that may result in liability to Ace, Woodstock '99, or the other parties indemnified under the

formal agreement for Ace's signature, a copy of which is attached for your reference (the "Agreement"). Both the letter agreement and the Agreement provide that one Ace retailer, namely American Hardwall Supply Co. will have the exclusive right to sell camping goods on the grounds of the Woodstock '99 Festival.[4]

Defendants contend that this "reference" to the Woodstock agreement was intended to incorporate that agreement by reference into the American letter agreement.

## III. *STANDARD OF REVIEW*

### A. *Summary Judgment*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

agreement. Accordingly, by executing the bottom of this letter, American Hardwall Supply Co. agrees to indemnify, defend and save harmless Ace Hardware Corporation, Woodstock '99, the Government Entities as defined in the Agreement, and their respective members, employees, contractors, subcontractors, and assigns against and from all costs, damages, settlements, judgments, fines, assessments, expenses, losses, liabilities, judgment executions, penalties, suits or fees imposed on, incurred by, or asserted against them by reason of the acts and/or omissions of American Hardwall Supply Co., its subcontractors, licensees, sublicensees, assignees, suppliers, volunteers, and/or employees and agents and American Hardwall Supply Co. will, at its sole cost and expense, defend or settle any such claims. As far as the insurance requirements are concerned, I have received a certificate of insurance from your insurance carrier and am having it reviewed by our insurance department.

American's owner, Ron D'Amore, was then instructed to sign and return the agreement to Ace.

law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## IV. DISCUSSION

■ In order for a document to be incorporated by reference into an agreement, two essential elements must be satisfied. First, the document to be incorporated must be identified with sufficient specificity. *See Chiacchia v. National Westminster Bank USA,* 124 A.D.2d 626, 628, 507 N.Y.S.2d 888 (2d Dep't 1986). Second, there must be a clear manifestation of an intent to be bound by the terms of the incorporated instrument. *See PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1201 (2d Cir.1996) (quoting *Lamb v. Emhart Corp.,* 47 F.3d 551, 558 (2d Cir.1995)). Only the second element is at issue in this case.

■ The arguments of the defendants in opposition to the instant motion is predicated upon three facts. First, that the letter constituting the American letter agreement contains the word "reference." Second, that American obtained insurance in accordance with the requirements of the Woodstock agreement. Third, that because American needed to refer to the Woodstock agreement to understand its obligation to Ace, it must have been incorporated. These facts do not provide a persuasive basis for the application of the doctrine of incorporation by reference to the waiver of subrogation contained in the Woodstock agreement.

While it true that the American letter agreement does contain various references to the Woodstock agreement—such as to the Woodstock agreement's definition of "Third Parties" and "Government Entities"—there is no mention or reference to the Woodstock agreement's waiver of subrogation provision. Under the American letter agreement (which was drafted by a Senior Attorney in Ace's legal department), Ace required American to indemnify it, Woodstock, and other parties entitled to indemnification under the Woodstock agreement, for losses caused by the negligence of American. Unlike Ace, American was not required by any party to waive the right of subrogation against Woodstock for Woodstock's negligence in exchange for the right to sell its goods at the festival.

Regardless of whether or not Woodstock and Ace intended to require American to waive subrogation as against Woodstock, there is no clear manifestation of such an intent in the American letter agreement. Under the American letter agreement, American agreed to indemnify Ace and Woodstock, and to obtain insurance. There is no evidence in the American letter agreement of any intent to bind American to all the terms and conditions of the Woodstock agreement, regardless of whether such terms and conditions were

specifically mentioned in the agreement which American signed.

Notwithstanding the absence of any express language incorporating the terms of the Woodstock agreement into the American letter agreement, counsel for Ace asserted at oral argument that the provision, "I have received a certificate of insurance from your insurance carrier and am having it reviewed by our insurance department," indicates that the parties intended for the Woodstock agreement's insurance provisions (including the waiver of subrogation requirement) to apply to American. No such intent is apparent from this statement. In fact, it is undisputed that the insurance obtained by American and provided to Ace for its review did not comply with the Woodstock agreement in that it neither waived subrogation nor listed Woodstock as an additional insured. By accepting the insurance provided by American, Ace impliedly acknowledged that American was not required to comply with the subrogation waiver in the Woodstock agreement.

It is apparent from the terms of the American letter agreement that the Woodstock agreement was provided to American for informational purposes—i.e., to substantiate and explain American's duties under its contract with Ace. This is wholly inadequate to manifest a clear intention on the part of American and Ace that, by accepting the American letter agreement, American was also accepting all of the terms and conditions of the Woodstock agreement. Counsel for Ace conceded as much at oral argument by arguing that the Woodstock agreement was attached to the American letter agreement to provide guidance to American as to its obligations under the American letter agreement.

## V. CONCLUSION

Because the mere use of the word "reference" is insufficient to manifest the req-

uisite intent for an incorporation by reference, and because there is no evidence that either party manifested a clear intent that American be bound by the terms of the Woodstock agreement, plaintiff's motion for summary judgment as to Woodstock's Thirteenth Affirmative Defense must be granted.

Therefore, it is,

ORDERED that

1. Plaintiff's motion for partial summary judgment is GRANTED;

2. Defendant's Thirteenth Affirmative Defense is DISMISSED; and

3. Defendant's Eleventh Affirmative Defense is DISMISSED by stipulation.

IT IS SO ORDERED.