FEDERATED MUTUAL INSURANCE COMPANY, as Subrogee of American Hardwall Supply Company of Rome, Inc., d/b/a True Value Hardware, Plaintiff,

v.

WOODSTOCK '99, LLC, Defendant.

Woodstock '99, LLC, Third-party Plaintiff,

v.

Ace Hardware Corporation, Third-party Defendant.

No. 5:00–CV–385.

United States District Court, N.D. New York.

March 7, 2002.

Law Offices of Mark D. Goris (Mark D. Goris, Esq., of counsel), Cazenovia, NY, for Plaintiff Federated Mutual Insurance Company.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP (Eugene Baule, Esq., of counsel), New York City, for Defendant and Third-party Plaintiff, Woodstock '99, LLP.

Ahmuty, Demers & McManus (William G. Kelly, Esq., of counsel), White Plains, NY, for Third-party Defendant Ace Hardware Corporation.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On March 6, 2000, plaintiff Federated Mutual Insurance Co. ("Federated") com-

menced the instant action as subrogee of American Hardwall Supply Company of Rome ("American") against defendant Woodstock '99, LLC ("Woodstock") to recover payments in excess of $600,000 made to its insured, American. Woodstock answered the complaint, and also filed a third-party action against third-party defendant Ace Hardware Corporation ("Ace"). On April 23, 2001, Federated's motion for partial summary judgment to dismiss Woodstock's Thirteenth Affirmative Defense (waiver of subrogation) was granted on the grounds that Ace had failed to obtain American's waiver of subrogation as required by the agreement between Ace and Woodstock. *See Federated Mutual Ins. Co. v. Woodstock '99, LLC,* 140 F.Supp.2d 225 (N.D.N.Y.2001).

Based on this prior decision, Woodstock now moves for summary judgment against Ace pursuant to Federal Rule of Civil Procedure 56. Ace opposes. Oral argument was heard on August 10, 2001, in Utica, New York. Decision was reserved.

## II. *FACTS*

Familiarity with the facts as stated in the April 23, 2001, decision is assumed. Additional facts necessary to the instant decision are briefly set forth below.

Woodstock operated the Woodstock '99 festival in Rome, New York during the summer of 1999 (the "festival"). Ace contracted with Woodstock to become a sponsor for the festival (the "Woodstock agreement"). Pursuant to the Woodstock agreement, Ace had the right to designate a supplier of camping supply products for the festival. By letter agreement dated July 16, 1999 (the "American letter agreement"), Ace designated American as the exclusive supplier of camping supply products at the festival.[1]

Pursuant to the Woodstock agreement, Ace was obligated to indemnify Woodstock for actions arising from the negligence of Ace, and to name Woodstock as an additional insured on Ace's insurance policy for the festival. Ace was also required to waive subrogation as against Woodstock. In addition, the Woodstock agreement required the supplier designated by Ace to waive subrogation against Woodstock. Exhibit A to the Woodstock agreement provided that "[Ace] and/or [Ace's] Retailer shall obtain insurance coverage, and shall provide evidence of such insurance as follows. All insurance shall waive subrogation against any of the Indemnities and shall name the Indemnities as additional insureds . . . ."

Ace obtained insurance which satisfied these requirements. In the American letter agreement, Ace informed American that, pursuant to the Woodstock agreement, American was also required to

indemnify, defend and save harmless Ace Hardware Corporation, Woodstock '99, the Government Entities as defined in the Agreement, and their respective members, employees, contractors, subcontractors, and assigns against and from all costs, damages, settlements, judgments, fines, assessments, expenses, losses, liabilities, judgment executions, penalties, suits or fees imposed on, incurred by, or asserted against them by reason of the acts and/or omissions of American Hardwall Supply Co., its subcontractors, licensees, sublicensees, assignees, suppliers, volunteers, and/or employees and agents[.]

(Katz Aff. Exh. B.)

In addition, the American letter agreement stated that Ace had received Ameri-

---

1. Although Ace asserts that the American letter agreement is irrelevant to a consideration of the instant motion, its performance under that agreement is relevant evidence of the parties' interpretation of their obligations under the Woodstock agreement.

can's certificate of insurance and was having it reviewed by Ace's insurance department. (*Id.*) It is undisputed that the insurance obtained by American, and reviewed and approved by Ace's in-house counsel, neither waived subrogation against Woodstock, nor named it as an additional insured.

American subsequently sustained significant damage to its property at the festival, and its insurer, Federated, commenced this action against Woodstock for negligence with regard to, *inter alia,* festival security. The third-party complaint against Ace alleges breach of contract and contractual indemnification.

## III. STANDARD OF REVIEW

### A. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclu-

sory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## IV. DISCUSSION

Both sides agree that the resolution of the instant motion depends, in large part, upon the construction afforded to the Woodstock agreement's requirement that "[Ace] and/or [Ace's] Retailer shall obtain insurance coverage, and shall provide evidence of such insurance as follows. All insurance shall waive subrogation against any of the Indemnities and shall name the Indemnities as additional insureds ...." As might be expected, each side urges a very different construction for this language.

Woodstock contends that this language imposed a contractual obligation upon Ace to obtain the waiver of subrogation against Woodstock from its suppliers. Woodstock argues that the clear intent of this language was to protect it from suit by Ace or any of its retailers for damages arising out of the festival. Woodstock argues that this result would not be achieved if the Woodstock agreement is construed to require only Ace or its retailer to waive subrogation against Woodstock.

Ace argues that because the Woodstock agreement required Ace "and/or" its supplier to waive subrogation against Woodstock, it follows that either Ace or its supplier could waive subrogation—and that Ace complied with its obligations by waiving subrogation on its own behalf. Ace's entire legal argument in support of this position is as follows:

> It is respectfully submitted to this Court that the term 'and/or' is a well accepted term indicating that either or both is

acceptable. The term 'or' is clearly understood in the English language to mean either or. That is, one or the other. In this particular case, as in all contract cases, the normal and ordinary interpretation of words should be utilized in interpreting a contract. Further, the intention of the parties are [sic] clearly spelled out in the agreement and the contract should be enforced as written.

(Opposition Mem. at 3.) [2]

■ As a threshold matter, it must be determined whether or not the competing interpretations urged by the parties render the contract ambiguous. Under New York law, the question of whether a writing is ambiguous is a question of law for a court. *See W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990). If a contract is found to be ambiguous, summary judgment is not appropriate and its meaning becomes a question of fact for the fact finder. *See Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000). A contract is ambiguous where its terms "suggest more than one meaning" when viewed objectively by a reasonably knowledgeable person who has examined the context of the entire integrated agreement. *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998). If contractual terms have a definite and precise meaning and are not reasonably susceptible to differing interpretations, they are not ambiguous. *See Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d

Cir.1992). In the instant case, both sides assert that the contract is not ambiguous, but each urges a different construction for the unambiguous language.

■ It is held that, as a matter of law, the Woodstock agreement was not rendered ambiguous by the inclusion of the term "and/or." The mere fact that the parties urge different interpretations of the contract is not necessarily sufficient to render it ambiguous. *See United States v. Local 1804–1, International Longshoremen's Assn.,* 44 F.3d 1091, 1097 (2d Cir.1995)(citing *Stroll v. Epstein,* 818 F.Supp. 640, 643 (S.D.N.Y.), *aff'd,* 9 F.3d 1537 (2d Cir.1993)). Competing interpretations render a contract ambiguous only where each of the competing interpretations is objectively reasonable. *See United National Ins. Co., v. Waterfront New York Realty Corp.,* 994 F.2d 105, 107 (2d Cir.1993). In this case, no objectively reasonable person could conclude from the mere inclusion of the term "and/or" that Woodstock intended to forego the bargained-for protection contained in the waiver of subrogation requirement.

It is clear that the intent of the waiver of subrogation provision in the Woodstock agreement was to protect Woodstock from lawsuits by Ace or its retailer. This result can only be achieved by construing this provision to require both Ace and its retailer to waive subrogation against Woodstock. As such, it is the only reasonable construction to be given this language. To hold otherwise would deprive Woodstock of the benefit of its bargain.[3]

---

2. It is noted that additional legal argument concerning Ace's interpretation of the Agreement is contained in the affidavit of William G. Kelly, Esq., submitted with its opposition to this motion. *See* Kelly Aff. at ¶¶ 5, 7, 9, 11, 16. Because the submission of legal argument by affidavit is expressly prohibited by

L.R. 7.1(a)(2), such arguments will not be considered.

3. In addition, reading the contract in the manner urged by Ace would render superfluous the requirement that *"All* insurance shall waive subrogation against any of the Indemnities . . . ."* (Emphasis added.)

The more difficult question is whether or not this language should also be read to have imposed a duty upon Ace to obtain such a waiver from American. There is no such express promise by Ace in the Woodstock agreement, and Woodstock does not adequately explain its basis for arguing that "it is clear that the terms of the contract between Woodstock '99 and Ace Hardware obligated Ace to ensure that its distributor name Woodstock '99 as an additional insured and that the distributor waive subrogation against Woodstock '99." (Def. Mem. at 6.) [4]

As noted above, it is clear that the parties contemplated that American, or any other retailer of Ace, would waive subrogation against Woodstock. As the party contracting with its retailer, the obligation would necessarily fall to Ace to ensure that this waiver occurred. In fact, the actual conduct of Ace pursuant to the American letter agreement demonstrates that this was its understanding. Ace undertook to notify American of its requirements under the contract (omitting, of course, the requirement that American waive subrogation against Woodstock), and voluntarily undertook responsibility to review the insurance obtained by American. As such, "the most persuasive evidence of the agreed intention of the parties in those circumstances is what the parties did when the circumstances arose." *Webster's Red Seal Publications, Inc., v. Gilberton World-Wide Publications, Inc.*, 67 A.D.2d 339, 341, 415 N.Y.S.2d 229 (1st Dep't, 1979).

In addition, Ace argued on the prior motion in this case that it had, in fact, required American to waive subrogation because Ace had incorporated the Wood-stock agreement by reference into its contract with American.[5] As such, it is held that the only reasonable construction to be give to the language at issue is that it imposed a duty on Ace to waive subrogation and, if Ace designated a supplier for the festival, to obtain its supplier's waiver of subrogation against Woodstock. A contrary construction would frustrate the reasonable manifestation of the parties' intent.

As an additional argument, Ace asserts that Woodstock's damages, if any, must be limited under New York law to the recovery of its out-of-pocket losses. Ace cites *Inchaustegui v. 666 5th Avenue, Ltd.*, 96 N.Y.2d 111, 725 N.Y.S.2d 627, 749 N.E.2d 196 (2001), for the proposition that "where a party enters into a contract with another party and that contract requires the other party to procure insurance, the failure to do so would not require the breaching party to pay all resulting damages, but will only require the breaching party to pay the actual out-of-pocket expenses of the other party." (Opp. Mem. at 4.) *Inchaustegui* does not support the result urged by Ace.

In *Inchaustegui*, the New York Court of Appeals was confronting a different situation than that present in the instant case. At issue in *Inchaustegui* was "whether [damages resulting from a tenant's failure to obtain insurance for the benefit of the landlord] could be minimized by any insurance the [landlord] had obtained[.]" *Id.* at 115, 725 N.Y.S.2d 627, 749 N.E.2d 196. The mere failure to obtain insurance is not the central issue in this case. Instead, the question is whether Ace's failure to obtain the waiver of subro-

---

**4.** Although Woodstock has failed to number the pages of its memorandum of law, citation is made to the pages in sequence, with the title page being numbered "1."

**5.** This argument was considered and rejected on Federated's motion for partial summary judgment. *See Woodstock '99*, 140 F.Supp.2d at 228–29.

gation entitles Woodstock to recover the cost of defense and indemnification from Ace.

Woodstock's argument is correct. The purpose of the waiver of subrogation was to prevent American, or Federated as subrogee, from commencing this very action. If Ace had obtained American's waiver of subrogation, the instant action could not be maintained as a matter of law. Under New York law, Woodstock is entitled to be put in as good a position as it would have been if Ace had fully performed. On these facts, that would include (1) relieving Woodstock from the cost of defending this action (including attorneys' fees) as well as (2) indemnifying Woodstock for the full amount of any reasonable settlement (on notice to Ace) or judgment obtained by Federated.

## V. *CONCLUSION*

The Woodstock agreement unambiguously required Ace to obtain American's waiver of subrogation against Woodstock. Ace breached the Agreement when it failed to obtain American's waiver of subrogation as against Woodstock, resulting in this action by American's subrogee. Woodstock is entitled to be fully protected by Ace from the lawsuit. Woodstock's motion for summary judgment must be granted.

Therefore, it is,

ORDERED that

1. Defendant and Third–Party Plaintiff Woodstock '99, LLC's, motion for summary judgment is GRANTED; and

2. (a) Third–Party Defendant Ace Hardware Corporation shall indemnify Woodstock '99, LLC, the sum of any reasonable settlement with the plaintiff, Federated, or the sum of any judgment obtained by Federated, and pay all past and future defense costs (including attorneys'

fees) associated with this action, or, in the alternative

(b) Third–Party Defendant Ace Hardware Corporation may, on or before April 5, 2002, indemnify Woodstock '99, LLC, and pay all past defense costs (including attorneys' fees) and assume the defense on behalf of Woodstock.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.